Yasmeen A. Allen (YA-1873)
**BALESTRIERE LANZA PLLC**
225 Broadway, Suite 2900
New York, NY 10007
Telephone:   (212) 374-5400
Facsimile:    (212) 208-2613
*Attorneys for Plaintiff*

U.S. DISTRICT COURT

2008 NOV 21  P 4: 09

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **THE GAMEOLOGIST GROUP, LLC,** | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| - against - | **JURY TRIAL DEMANDED** |
| **NEW YORK DIVISION OF LOTTERY and SCIENTIFIC GAMES, INC.,** | |
| Defendants. | |

Plaintiff The Gameologist Group, LLC ("Plaintiff" or "Gameologist"), by its attorneys, Balestriere Lanza PLLC, for its Complaint against Defendants New York Division of Lottery ("the Lottery") and Scientific Games, Inc. ("Scientific") (collectively, "Defendants"), alleges as follows upon information and belief, except as to allegations concerning Gameologist , which are made upon personal knowledge:

## PRELIMINARY STATEMENT

1.     The Lottery and Scientific conspired to steal the intellectual property of Gameologist.  Gameologist introduced Defendants to a lottery concept for which it had a federally registered trademark.  Defendants told Gameologist they weren't interested in the concept, only to steal it and profit from it, sharing nothing with Gameologist.

Plaintiff is thus forced to sue for injunctive relief and damages arising from Defendants' unauthorized and illegal use of Plaintiff's registered trademark, constituting willful infringement, unfair competition, passing off, false advertising, and false designation of origin, under the federal and state law.

2.      The Gameologist Group, LLC is a corporation specializing in the development of casino games, board games, slot machines, computer games, video games, and lottery tickets.

3.      Gameologist is the sole owner of a federally registered trademark "BLING BLING" ("the Mark," "the BLING BLING Mark," or "BLING BLING").

4.      After registering the Mark in 2002, Gameologist contacted various parties in the gaming industry to see whether they would be interested in purchasing licensing rights to the Mark.

5.      In January 2004, Gameologist signed a contract allowing Scientific Games ("Scientific") to use the Mark, but fewer than three months later, Scientific cancelled the contract, because the Mark was allegedly "too ethnic" (an apparent reference to the term's origins within the African-American community).

6.      Shortly thereafter, Gameologist shopped its Mark directly to the Lottery, which similarly rejected the Mark. The Lottery's excuse was that the Mark "failed to meet lottery salability standards."

7.      In December 2007, Gameologist discovered that, despite their misrepresentations, Defendants were interested in Gameologist's idea and the Mark. While watching television in his New York home, a member of the Gameologist group

2

saw a New York Lottery television advertisement that was virtually a carbon copy of the very idea Gameologist had pitched to the Lottery three years prior—a scratch-off ticket entitled "BADA BLING," which not only sounded like Gameologist's Mark, but looked just like it as well. This was, and is, a direct infringement on Gameologist's BLING BLING Mark.

8.     Upon information and belief, the metamorphosis from Bling to "*Bada Bling*" was itself a result of Gameologist's interaction with Defendants.

9.     Gameologist learned that the ticket was being manufactured for the Lottery by none other than Scientific, the very same company that had cancelled its contract with Gameologist, claiming concerns that the ticket was racially inappropriate.

10.     This conspiracy to defraud on behalf of the Lottery and Scientific has cost Gameologist millions of dollars, as well as any and all benefits owed to Gameologist as the inventors and rightful owners of the mark.

11.     Gameologist tried to settle this dispute amicably, but Defendants refused and even encouraged Gameologist to sue.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1121 (original jurisdiction in cases involving infringement of a federally registered trademark), 28 U.S.C. § 1338 (jurisdiction to adjudicate claims of infringement of a federally registered trademark and accompanying claims of unfair competition), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1332 (diversity). The amount in

controversy exceeds $75,000. This Court has supplemental jurisdiction over the related state and common law claims pursuant to 28 U.S.C. § 1367(a).

13.     This Court has personal jurisdiction over all of the parties. Plaintiff is a citizen of the State of New Jersey and consents to the jurisdiction of this Court. Defendant Lottery has purposefully availed itself of the privileges and protections of the State of New Jersey and has purposefully directed its activities toward the State of New Jersey by actively marketing its lottery games (including BADA BLING) through New Jersey, on television, radio, print, or other media. Defendant Scientific has purposefully availed itself of the privileges and protections of the State of New Jersey by doing business in this state, including, but not limited to, providing lottery gaming services to various New Jersey entities.

14.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**PARTIES**

15.     Plaintiff The Gameologist Group, LLC is a Limited Liability Corporation organized under the laws of New Jersey, with its principal place of business at 3430 Atlantic Avenue, Atlantic City, New Jersey 08104.

16.     Defendant New York Division of Lottery has its principal place of business at One Broadway Center, Schenectady, New York 12301.

17.     Defendant Scientific Games, Inc. is a corporation organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of

4

business in the City and State of New York at 750 Lexington Avenue, Floor 25, New York, NY 10022.

18.     At all times relevant herein, Scientific was authorized to do business in, was doing business in, and maintained an office for service of process located in, the State of New York at 750 Lexington Avenue, Floor 25, New York, NY 10022.

## STATEMENT OF FACTS

### The Origins of the Mark and the Formation of The Gameologist Group

19.     Jeffery McGill ("McGill") was a slot machine technician from Atlantic City, New Jersey.  McGill first developed the idea for BLING BLING in 2001, and realizing the potential commercial benefit of his concept, registered BLING BLING with the New Jersey Trademark Office in January 2002.

20.     McGill realized, however, that he could not develop and market his trademark entirely on his own which is why he assigned ownership of the Mark to The Gameologist Group LLC ("Gameologist"), a minority owned corporation consisting of Stephan Jackson, John Bento, Simone Shannon, Marvin Napper, Malik Morris, Ahmad Austin and Joseph Cassarino.  Gameologist, in turn, organized a business plan to develop products, design websites, establish clients, and negotiate licensing with third parties.

21.     At this time, Gameologist developed a series of casino-style games based on the BLING BLING Mark.  Gameologist developed, for example, a three-dice board game called BLING BLING, as well as a BLING BLING slot machine and a BLING BLING casino table game.

22.     In order to avoid conflicts with competitors and prevent unauthorized use of the BLING BLING Mark, McGill registered BLING BLING with the United States Patent and Trademark Office on January 7, 2003 – serial number 78200947.   The description for the "Goods and Services" of the Mark defined BLING BLING as "Entertainment in the nature of online three- dice casino games."

23.     Immediately thereafter, Gameologist began analyzing the potential business value the Mark would have in, among others, the lottery card industry. Gameologist decided to register for another mark under the BLING BLING name.  This time, the "Goods and Services" of the Mark were defined as follows:

> Casino games and equipment therefore, namely, dice, board games, card games, *lottery cards*, coin-operated video games, hand-held unit for playing electronic games, stand alone video game machines, stand alone video output game machines, and game tables.

(BLING BLING 2002 Trademark Documents are attached hereto as "Exhibit A", Emphasis added).

### Gameologist Promotes the Mark

24.     Gameologist began promoting its Mark aggressively in Summer 2002.

25.     In August 2002, Gameologist purchased from *Casino Journal Magazine* an "email blast,"[1] which introduced Gameologist's products to every casino and gaming executive in the Country, including Defendant Scientific Games.

26.     On September 19, 2002, Gameologist attended the Global Gaming Exposition in Las Vegas and set up a booth to promote the Mark.

---

[1] An email blast is an electronic mailing, sent simultaneously to a large number of recipients on a mailing list.

27.     Carla Schaefer ("Schaefer") of Oberthur Gaming Technologies Corporation ("Oberthur") approached Gameologist about BLING BLING, and discussed Oberthur's interest in purchasing licensing rights to the Mark. Schaefer informed Gameologist that Oberthur had researched the merits of the Mark and she thought it had the potential to outsell their number one selling game SLINGO.

28.     On October 11, 2002, Gameologist received a letter from Schaefer outlining a potential deal between Gameologist and Oberthur.

29.     In the letter, Schaefer informed Gameologist that Oberthur was the "leading producer and marketer of scratch off lottery tickets in the world" and made mention of a BLING BLING scratch off lottery ticket.

30.     Additionally, Schaefer presented eight BLING BLING spin off concepts, including such games as "BLING BLING™ Lucky 7's," "BLING BLING™ Zales Jewelry Extraveganza," "BLING BLING™ Las Vegas," and "BLING BLING™ Wild Spin."

31.     As part of the potential agreement, Schaefer claimed that Oberthur would "guarantee the Gameologist Group thirty percent (30%) of licensing and royalty fees based on the projected sales of the game." (The Letter from Oberthur Gaming Technologies is attached hereto as "Exhibit B").

32.     The Oberthur agreement, however, was never finalized and Gameologist ended up signing a deal with MDI Entertainment, LLC ("MDI"), a subsidiary of Scientific.

## Gameologist Signs a Deal with Scientific Games

33.     In April 2003, after ending discussions with Oberthur, Gameologist contacted MDI.

34.     MDI is a company that specializes in "game and promotional entertainment for use by the worldwide lottery industry."[2]

35.     MDI is a subsidiary of Scientific, which is "the leading integrated supplier of instant tickets, systems and services to lotteries worldwide, a leading supplier of server based gaming machines and systems, Amusement and Skill with Prize betting terminals, interactive sports betting terminals and systems, and wagering systems and services to pari-mutuel operators." [3]

36.     Scientific has a market capitalization of $1.55 billion[4] and recently purchased Oberthur.

37.     Gameologist exchanged numerous emails with MDI in an effort to secure a meeting with MDI's president, Steve Safarin ("Safarin").

38.     In October 2003, Gameologist met with Safarin at MDI's corporate headquarters in Alphretta Georgia.  Also present at the meeting were Jeffery Schweig, Safarin's Executive VP, and John Paul Chandler, a design expert for MDI.

39.     During the meeting, Safarin told Gameologist that MDI was interested in the mark.   He mentioned that the Lottery had earlier talked to Scientific about

---

[2] https://www.mdientertainment.com/about/snapshot.php (Last viewed on October 7, 2008).

[3] http://phx.corporate-ir.net/phoenix.zhtml?c=64574&p=irol-irhome (Last viewed on October 15, 2008).

[4] http://finance.yahoo.com/q/co?s=SGMS (Last viewed on October 7, 2008).

producing a "bling-bling" oriented scratch-off lottery ticket.   However, during the meeting, MDI's attorney reviewed a copy of Gameologist's USPTO trademark and informed Safarin that Gameologist did, in fact, own the Mark.

40.     A few months later, in January 2004, Gameologist Group and MDI signed an agreement authorizing MDI's use of the BLING BLING Mark through December 2006.

41.     MDI issued a press release on January 30, 2004, describing its Agreement with Gameologist:

> MDI Entertainment, a wholly-owned subsidiary of Scientific Games, has signed a three-year agreement with the GAMEOLOGIST GROUP, LLC for the worldwide lottery industry licensing rights to the name and marks of BLING BLING™.  The agreement extends through December 2006 and covers instant and on-line lottery games and promotions, including tickets, point-of-sale and broadcast and print advertising.

42.     Safarin is quoted in the same press release:

> BLING BLING is a four-year-old expression whose origin can be traced to hip-hop music and the young adult, urban market, which today comprises about 45 percent of the U.S. population.  Recently, the term has made its way into the mainstream culture and, as a result, has begun to attract more and more advertising dollars from Fortune 500 consumer goods companies looking to appeal to young adults. *We believe the BLING BLING property would lend itself nicely, for example, to a Diamonds and Dollars-themed game, or perhaps a game called Bling Bling Fling that offered high-end items such as expensive jewelry, luxury automobiles, exotic vacations or state-of-art electronics.*

(MDI's Press Release is attached as "Exhibit C").

43.     The announcement of the contract was published in multiple trade journals, including *Public Gaming International* and *Lottery Insider*, which are widely distributed to members of the gaming community, including the New York Lottery. Several gaming magazines featured pictures of Gameologist's scratch-off tickets.

44.     Gameologist also issued its own press releases publicizing its BLING BLING concept to the gaming market and media. The press release was picked up on the internet by AOL Finance and Yahoo Finance as well as thirty television stations around the country (Gameologist's Press Releases are attached hereto as "Exhibit D").

45.     Anyone actively involved in the gaming industry would have been aware that Gameologist owned the rights to the BLING BLING Mark and that Scientific sought to manufacture a lottery ticket bearing the same name.

46.     In March 2004, despite the wide publication and circulation of the news of the contract between Gameologist and Scientific, Scientific cancelled the contract.

47.     Scientific offered a sparse list of excuses for canceling its contract with Gameologist.

48.     After expressing concern over how consumers would react to BLING BLING scratch-off tickets, Scientific told Gameologist that all of its target markets rejected the Mark because it was "too ethnic."

49.     When pressed further by Gameologist, Scientific claimed that it had no intention of embarrassing itself by offering a game to the public that was racially inappropriate.

50.     The excuses offered by Scientific for canceling the contract were pretexts, designed by Scientific to cloak its true intention of misappropriating Gameologist's intellectual property for its own commercial benefit.

**New York Lottery Pretends That it is Not Interested in BLING BLING**

51.     After Scientific terminated its contract with Gameologist, Gameologist wrote to Governor George E. Pataki of New York, seeking to market the Mark directly to the Lottery.

52.     Pataki's office forwarded Gameologist's letters to the Lottery.

53.     On July 19, 2004, Nancy A. Palumbo of the Lottery responded to Gameologist's letters, informing Gameologist that the Lottery was not going to use the Mark:

> Prior to May 2002, when the New York Lottery was determining a name for the multi-state lottery game, which is now called "Mega Millions," the name "BLING BLING" was suggested as well as over 100 possible alternatives. *At that time, we felt the name "BLING BLING" had potential to attract the younger demographic if developed as an instant ticket.* Independent of MDI, the New York Lottery asked our Instant ticket manufacturer, Pollard Banknote Ltd. to produce a mock-up version of the Instant ticket "BLING BLING" for focus purposes . . . . *After focusing the concept , it was determined that New York Lottery would not pursue the game "BLING BLING" due to disappointing focus results.*

(The NY Lottery's July 19, 2004 letter is attached hereto as "Exhibit E").

54.     Like Scientific, the Lottery pushed Gameologist away, claiming that its "focusing" proved the idea "disappointing."

11

### New York Lottery Releases Copy-Cat Game "BADA BLING," Which is Almost Identical to BLING BLING

55.     Regardless of these misrepresentations, a few years later, in December 2007, the Lottery began distributing scratch-off tickets entitled "BADA BLING," a ticket almost identical to the BLING BLING lottery ticket that Gameologist designed and developed. (A Side-by-Side Comparison of Plaintiff and Defendants' Lottery Tickets is attached hereto as "Exhibit F").

56.     The BADA BLING ticket focused on diamonds, luxury items, and dollar signs, just like the BLING BLING ticket Gameologist developed three years earlier and marketed to both Scientific and the Lottery.

57.     Scientific, the company to which Gameologist had originally pitched the Mark, was even the Manufacturer of BADA BLING.

58.     Gameologist first realized these BADA BLING tickets were being sold when a member of Gameologist Group saw a television commercial for the scratch-off ticket.

59.     The commercial featured African American actors pretending to be rappers and apparently Italian Americans stereotypically acting like organized criminals singing a re-made Duke Ellington song with the tagline "It don't mean a thing if it ain't Bada-Bling."

60.     Additionally, the commercial explicitly advertised the instant game as "Bada meets Bling," thereby emphasizing "Bling" as the dominant word in the BADA BLING concept.

61. Since long before 2004, Gameologist has been, and is now using the BLING BLING Mark in connection with the promotion, marketing, and sale of gaming machines and equipment, casino games, game tables, and most relevantly here, lottery cards.

62. Gameologist's promotion, marketing, and use has been valid and continuous, and has not been abandoned.

63. Gameologist's mark is symbolic of extensive good will and consumer recognition built up by Gameologist through a considerable amount of time and effort in promoting the Mark.

64. Both Scientific and the Lottery knew of Gameologist's prior use and applications for the BLING BLING Mark and Defendants have misappropriated the Mark in bad faith.

65. Plaintiff's BLING BLING scratch-off tickets and Defendants' BADA BLING scratch-off tickets are substantially similar.

66. The dominant element of Plaintiff's BLING BLING scratch-off tickets, and Defendants' BADA BLING scratch-off tickets, and the element which purchasers would refer to in recalling both Plaintiff's and Defendants' goods, is BLING.

67. The Lottery used the word Bling extensively on their website through media advertisements and promotions for BADA BLING. These promotions included such games as "Bling Yourself Out" and "Sing for Bling."

68. Defendants' BADA BLING scratch-off tickets are the same or closely related to the goods provided by Gameologist and are being offered through the same

of overlapping channels of trade to the same or overlapping classes of purchasers and users.

69.     Defendants' BADA BLING scratch-off tickets so resemble Gameologist's Mark due to striking similarities, as to likely cause confusion, mistake, or deception.

70.     The purchasing public will believe that Defendants' goods emanate from, or in some way are associated or connected with, or sponsored, authorized or warranted by Gameologist—to Gameologist's detriment.

71.     Likelihood of confusion is enhanced by the fact that the goods at issue are identical or substantially similar and the prospective purchasers of Plaintiff and Defendants' goods are the same.

72.     BLING BLING was rejected by Scientific and the Lottery only a few years earlier, because it was supposedly "too ethnic" and "did not meet salability standards." Yet, the BADA BLING scratch off tickets can in no way be construed as less "ethnic" or more apt to meet "salability standards." If anything, BADA BLING is, in fact, more "ethnic" than BLING BLING, and was clearly offensive to the general public.

73.     The Lottery's TV commercial was publicly scorned. One online blog described the commercial in an entry entitled "Ba-da Bling by the New York State Lottery: What were they thinking?":

> Arguably the only advertisements more crass than the rapturous "Viva Viagra" celebrations of erectile function, are the "Ba-da Bling" spots that have recently reared their ugly tails. *The advertisements for this New York Lottery scratch-off game are more joint mafia (read: Italian) and hip hop (read: Black and Latino) coon show, than sales job.* Too unimaginative to qualify as parody, the television spot features gangsta [sic]

types, stereotypically ripped from top-forty rap videos and Sopranos outtakes, parading around a stage extolling the virtues of conspicuous consumption . . . . If it wasn't so insane, it would be grotesque."[5]

74.     The New York chapter of the Sons of Italy also publicly voiced disgust at the Lottery's BADA BLING commercial. A spokeswoman for the Sons of Italy spoke out against the commercial, saying, "Here we go again, the traditional stereotype of the Italian-Americans, they belong to the mob . . . . I know a lot of people are saying you are overly sensitive. But Americans have become more sensitive to most racial groups, and it should apply to Italian Americans."[6]

75.     Scientific and the Lottery were not truthful about their reasons for rejecting the Mark and, these two entities conspired to abuse the Mark and cut Gameologist out of any licensing fees rightfully due to it.

**The Lottery, Scientific and Lottery Vendors Have Profited Using Gameologist's Mark**

76.     The Lottery, Scientific, and even Lottery vendors have made a significant profit by infringing on Gameologist's mark.

77.     Each lottery vendor that sells BADA BLING tickets have earned, and continue to earn 6% for every ticket that they sell. BADA BLING tickets sell for $10 each, giving the vendors sixty cents for each BADA BLING ticket sold.

78.     Scientific has also made a healthy profit by producing the BADA BLING ticket. BADA BLING instant tickets have a run-rate of sixteen million, which means

---

[5] http://www.onnyturf.com/blogs/view_post.php?content_id=14275 (Last viewed October 2, 2008).
[6] http://www.nypost.com/seven/02042008/news/nationalnews/lotto_soprano_no_36 250.html (Last viewed on February 4, 2008).

that Scientific printed sixteen million BADA BLING tickets for the Lottery. For each ticket printed, Scientific earned .5%, amounting to $800,000 in profit for the production of BADA BLING tickets.

79.     Additionally, Scientific has also made a healthy profit by abusing the Mark when it designed and printed a Georgia Lottery game entitled "$50,000 Bling."

80.     Even more significant is the profit that the Lottery has made from the sale of BADA BLING tickets. With a run-rate of sixteen million, at $10 per ticket, BADA BLING instant tickets have provided the Lottery with a raw revenue of $160 million. In fact, for a number of weeks, BADA BLING was the Lottery's highest selling instant game.

81.     Additionally, as of February 7, 2008, BADA BLING had the highest EV (expected value) percentage, at 74.09%.[7]

82.     The Lottery and Scientific have made, and continue to make, a significant amount of money by willfully infringing on Gameologist's mark.

### Gameologist Attempts to Resolve its Differences with NY Lotto

83.     Between July 19, 2004—when the Lottery first said it was not interested in the Mark—and December 2007, when the Lottery released the copy cat game, neither the Lottery nor Scientific made *any* attempt to contact Gameologist for licensing rights to its Mark.

---

[7] http://www.dollarscratchoffs.com/index.php?state=NY, (Last viewed February 7, 2008).

84.    In February 2008, before bringing this matter before the Court, Gameologist and its IP attorney Celeste Butera ("Butera"), of Rivkin Radler LLP, attempted to settle this matter amicably.

85.    In an email to Bill Murray ("Murray"), counsel for the Lottery, Butera outlined Gameologist's claim that the Lottery had used Gameologist's trademark without authorization, and concluded the email by proposing a meeting to review the positions of the parties and discuss a possible resolution:

> "We again reiterate our reasonable request for a meeting to discuss these matters and our client's claim in detail in order to attempt to amicably resolve this matter."

86.    Following this letter, in an oral conversation, Murray denied Gameologist's claims, telling Butera that the Lottery had no intention whatsoever of entering into a proper agreement with Gameologist.  Murray encouraged this lawsuit, telling Butera to "[S]ue us, and let the chips fall where they may."

87.    After having its intellectual property outright stolen, seeing the fruits of that property wrongly go to others, and trying to resolve the situation amicably and outside of the courtroom, Gameologist has no choice but to bring this suit against the Lottery and Scientific to recoup the damages that it has sustained as a direct result of Defendants' unlawful conspiracy to steal and use Gameologist's intellectual property.

**IGT Attempted to Use a Mark Similar to BLING BLING, but Failed**

88.    The Lottery and Scientific are not the first corporations to try and use the Mark without entering into proper licensing agreements with Gameologist.

89.     IGT's attorney Sana Hakim ("Hakim"), of Bell Boyd and Lloyd, made a low offer to Gameologist to purchase licensing rights to the Mark.  However, after Gameologist rejected the low offer, Hakim informed Gameologst that IGT would create another game entitled King Bling and avoid paying Gameologist altogether.

90.     On July 21, 2004, IGT filed for the trademark KING BLING ("King Bling"), Serial No. 78/454,522.   As this represented a direct infringement on the Mark, Gameologist filed an opposition to King Bling with the USPTO on March 30, 2005.

91.     Gameologist followed up on this opposition on October 28, 2005, with a motion for default judgment on the grounds that IGT had not responded in a timely manner to Gameologist's discovery requests.

92.     On December 30, 2005, the USPTO rendered a judgment in favor of Gameologist, sustaining the opposition and refusing IGT's application for the mark of King Bling.

## Neither the Lottery nor Scientific Registered for the BADA BLING Trademark and Instead Filed an Extension of Time to Oppose BLING BLING

93.     Unlike IGT, who registered for, and was subsequently denied, the trademark of King Bling, neither the Lottery nor Scientific registered for the BADA BLING trademark, as they understood their application for the mark would most certainly be denied.

94.     The Lottery's lack of applying for the BADA BLING trademark or signing an appropriate licensing agreement with Gameologist for the use of the Mark, is not in keeping with the standard Lottery practice.  In the past, the Lottery has printed instant

game lottery cards using, among others, the Monopoly, Deal or No Deal, and Yankees trademark. In each of these instances, the Lottery has gone through the proper procedures of signing a licensing agreement with the respective owner of the mark and paying them reasonable licensing fees.

95.     Additionally, in general, lotteries must avoid even the appearance of impropriety and unethical behavior, which includes procuring all trademarks for distributed lottery products. However, the Lottery made no attempt to license the Mark from Gameologist.

96.     The Lottery believed that because Gameologist was a small, minority-owned corporation with a lesser known trademark—as compared to such marks as Monopoly, Deal or No Deal and the Yankees—they would be able to take advantage of the Mark without entering into a proper agreement with Gameologist.

97.     In a failed effort to get around registering for the BADA BLING trademark or signing a licensing agreement with Gameologist, the Lottery and Scientific tried to oppose the BLING BILNG mark.

98.     On March 12, 2008, both Scientific and the Lottery filed for an Extension of Time to oppose the Mark. Both were granted an extension, and had until June 25, 2008, to file their opposition to the Mark.

99.     However, neither entity filed an opposition because, upon information and belief, neither entity had a legal basis to do so.

## Lottery not Immune from Suit in Federal Court

100.    Taking into consideration the facts in this case, the State would not be ultimately liable for a judgment against the Lottery and, therefore, this suit is not barred by the Eleventh Amendment.

101.    More specifically, although the Lottery pays a percentage of its revenue to the State, it is still autonomous and independent of the State and is not funded by the State.

102.    While other state entities have their property leases and vendor contracts signed by the State, the Lottery does not.  In fact, vendors such as Scientific do not design Lottery games on state owned equipment.  Rather, every element of the game design and content is fully outsourced to vendors who use their own equipment.  For example, the thousands of Video Lottery Terminals ("VLT's") such as those seen at race tracks, or "racinos", around New York are completely outsourced.

103.    The Lottery is required to retain 15% of the total revenue wagered after payout for prizes to be retained by the division of operation, administration, procurement and promotional purposes and vendor's fees.  The damages sought by Gameologist would come solely from this 15%, and not from the New York State Treasury.

104.    Once the Lottery satisfies its statutory obligations to set aside a percentage of its revenue in a prize fund and to pay no less than a percentage of its revenue to the State, it operates entirely free from legislative or executive interference.

105.   The Lottery sets its own budget, has complete control over its expenditures and finances its operational expenses entirely out of the revenue it generates.

106.   The New York State Governor's Office defines the Lottery as "an autonomous unit."[8]

107.   Not only does the Lottery behave as an autonomous entity, and is described as an autonomous unit by the Governor's office and state website, but the law that governs the Lottery — as laid out specifically in Article 34 of the New York State Tax Law — defines the Lottery as autonomous and gives it a wide range of powers, free from state oversight.

108.   Section 1603 points out the lottery was created within the department of taxation and finance as "a separate and independent division of lottery."

109.   Section 1603 also grants a host of powers to the director of the Lottery:

> The director shall be the chief executive officer of and in sole charge of the administration of the division. . . . The director may from time to time, create, abolish, transfer, and consolidate bureaus and other units within the division not expressly established by law as he may determine necessary for the efficient operation of the division, subject to the approval of the director of the budget.[9]

110.   The Lottery is an autonomous entity that behaves like a private corporation without the supervision and oversight of the state government.  Any suit against the Lottery, and any damages awarded thereafter, would come directly from the

[8] http://www.goer.state.ny.us/orientation/ch12.html, (Last viewed November 12, 2008).
[9] NY CLS Tax § 1603 (2008).

15% of the revenue that the Lottery keeps for administrative purposes. In this case, the 15% would come directly from the $160 million that the Lottery has made from their BADA BLING tickets, which would total approximately $24 million.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS

### FIRST CAUSE OF ACTION

### (Trademark Infringement under the Lanham Act)

111.   Plaintiff repeats and realleges paragraphs 1 through 110 above as though fully set forth herein.

112.   Plaintiff owns the BLING BLING registered trademark.

113.   The BLING BLING registered mark is valid and subsisting.

114.   Defendants have used, are using, and/or imminently intend to use the BLING BLING registered mark in interstate commerce, without the consent of Plaintiff, in connection with the production and sale lottery scratch off tickets.

115.   Defendants' conduct as alleged above constitutes the unauthorized use in commerce in the United States of the BLING BLING registered mark in connection with the sale, offering for sale, distribution, or advertising of its products, and has caused and/or is likely to cause confusion or mistake or deception of the public as to (i) the affiliation, connection, and/or association with Defendants of Plaintiff and BLING BLING products; (ii) the origin of the BLING BLING products; and/or (iii) the sponsorship, endorsement, or approval of the Defendants' products by Plaintiff, in each case a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

116.   Defendants' actions were deliberate, willful, and in conscious disregard of Plaintiff's rights.

117.   Defendants' conduct as alleged above has caused and/or will imminently cause Plaintiff to suffer irreparable harm, for which it has no adequate remedy at law.

118.   Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, and to the costs of this action and to attorneys' fees.

## SECOND CAUSE OF ACTION

### (False Designation of Origin and Unfair Competition under the Lanham Act)

119.   Plaintiff repeats and realleges paragraphs 1 through 118 above as though fully set forth herein.

120.   Defendants have used, in connection with the production and sale of lottery tickets, false designations of origin and false descriptions and representations, including words or other symbols which tend to falsely describe or represent such Lottery tickets and have caused such tickets to be sold in commerce with full knowledge or willful blindness of the falsity of such designations of origin and such descriptions and representations, all to the detriment of Plaintiff.

121.   In particular, the production and sale of lottery tickets under the Infringing mark constitutes the use of false descriptions and representations tending falsely to describe the scratch off tickets produced and sold by Defendants.

122.   Further, the use in commerce of Gameologist's trademark without the consent of Gameologist has caused and is likely to continue to cause confusion, or to cause mistake, as to the sponsorship, or approval of Defendants' scratch off tickets.

123.   The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

124.   As a result of the action of Defendants, Plaintiff is suffering irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### THIRD CAUSE OF ACTION

#### (False Advertising under the Lanham Act)

125.   Plaintiff repeats and realleges paragraphs 1 through 124 above as though fully set forth herein.

126.   Defendants' advertising, marketing and other materials used in interstate commerce contain at least one false or misleading description or representation of fact because it conveys the impression that Defendants are authorized to use the BLING BLING mark and/or affiliated with or sponsored by Plaintiff.

127.   Defendants' activities constitute the use in commerce of any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, false or misleading representation of fact in connection with goods or services, which in commercial advertising promotes or misrepresents the nature, characteristics, qualities or geographic origin of its or another

person's goods, services, or commercial activities, in violation of § 43(a) of the Lanham Act 15 U.S.C. § 1125(a).

128.    Defendants have engaged and continue to engage in a willful and knowledgeable practice of false advertising with malicious and reckless disregard for the truth.

129.    Based upon the wrongful acts of Defendants, Plaintiff has incurred monetary damages in an amount presently unknown.

130.    The acts of Defendants make this an exceptional case entitling Plaintiff to recover treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b).

131.    Plaintiff may have no adequate remedy at law in the event monetary damages cannot be properly calculated.

132.    Defendants' activities have caused irreparable injury to Plaintiff and unless such activities are restrained by this Court, they will be continued and continue to cause great injury to Plaintiff.

133.    Plaintiff is entitled to preliminary and permanent injunctive relief to prevent defendant's continued false advertising.

## FOURTH CAUSE OF ACTION

### (Unfair Competition under the Common Law of New Jersey)

134.    Plaintiff repeats and realleges paragraphs 1 through 133 above as though fully set forth herein.

135. Defendants have unfairly competed with Plaintiff by intentionally taking steps that are likely to cause confusion in the trade as to the source of Defendant's products or which are likely to lead the public to believe that Defendants are in some way connected with Plaintiff.

136. By reason of the foregoing, Plaintiff is entitled to injunctive relief under the New Jersey common law and to an award of Defendants' profits.

137. Defendants' conduct has caused and will continue to cause irreparable injury to Plaintiff unless enjoined by this Court. Plaintiff has no adequate remedy at law.

### FIFTH CAUSE OF ACTION

### (Trademark Infringement under the Common Law of New Jersey)

138. Plaintiff repeats and realleges paragraphs 1 through 137 above as though fully set forth herein.

139. Plaintiff owns the BLING BLING registered trademark.

140. The BLING BLING registered mark is valid and subsisting.

141. Defendants' conduct as alleged above constitutes infringement and misappropriation of the BLING BLING trademark in violation of Plaintiff's rights under the common law of the State of New Jersey.

142. Defendants' actions were deliberate, willful, and in conscious disregard of Plaintiffs' rights.

143. Defendants' conduct as alleged above has caused and/or will cause Plaintiff to suffer injury, for which it has no adequate remedy at law.

144.    Plaintiff is entitled to actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to attorneys' fees.

## SIXTH CAUSE OF ACTION

### (Passing Off)

145.    Plaintiff repeats and realleges paragraphs 1 through 144 above as though fully set forth herein.

146.    Plaintiff owns the BLING BLING registered trademark.

147.    The BLING BLING registered mark is valid and subsisting.

148.    Defendants' conduct as alleged above constitutes Passing Off in violation of Plaintiff's rights under the common law of the State of New Jersey.

149.    Defendants' actions were deliberate, willful, and in conscious disregard of Plaintiffs' rights.

150.    Defendants' conduct as alleged above has caused and/or will cause Plaintiff to suffer injury, for which it has no adequate remedy at law.

151.    Plaintiff is entitled to actual damages in an amount to be determined at trial, to have such damages trebled, to Defendants' profits, to the costs of this action, and to attorneys' fees.

## SEVENTH CAUSE OF ACTION

### (Quantum Meruit)

152.    Plaintiff repeats and realleges paragraphs 1 through 151 above as though fully set forth herein.

153.    Plaintiff rendered valuable services to Defendants which Defendants gladly accepted.

154.    Defendants benefited from these services corporately.

155.    Defendants knew, or should have known, that the Plaintiff expected to be compensated for the reasonable value of such services.

156.    Defendants have failed and/or refused to compensate Plaintiff for the value of services and consequent benefit conferred upon them.

157.    To date, the Plaintiff has not been compensated for the reasonable value of the services provided to the Defendants.

158.    Defendants have been unjustly enriched as a result of their failure and/or refusal to compensate Plaintiff for the services rendered on Defendants' behalf.

159.    Plaintiff is entitled to recover from the Defendants based upon the theory of Quantum Meruit and/or based upon the equitable theories of Unjust Enrichment to the Defendants and/or unjust loss suffered by the Plaintiff, due to Defendants' negligence or intentional and willful conduct.

## EIGHTH CAUSE OF ACTION

### (Unjust Enrichment)

160.    Plaintiff repeats and realleges paragraphs 1 through 159 above as though fully set forth herein.

161.    Defendants had a real and tangible benefit conferred upon them by Plaintiff having provided valuable services to Defendants.

162.    The services provided by the Plaintiff were for the benefit of Defendants, which have fully enjoyed, appreciated, accepted, and retained the benefits of the services by the Plaintiff.

163.    Defendants' acceptance and retention of the benefits described above, without paying for such services, has unjustly enriched Defendants, and it would be inequitable for them to retain the value of the benefits of these services without providing just compensation to the Plaintiff.

164.    Defendants' Unjust Enrichment has caused the Plaintiff damages and losses for which he should be compensated in an amount to be determined at the time of the trial.

165.    Plaintiff has additionally been damaged due to the fact that it has had to incur attorneys' fees and costs in this matter.

## NINTH CAUSE OF ACTION

### (Civil Conspiracy)

166.    Plaintiff repeats and realleges paragraphs 1 through 167 above as though fully set forth herein.

167.    Upon information and belief, the Defendants, and their agents and employees, and each of them, entered into a conspiracy to engage in the wrongful conduct complained of herein, and intended to benefit both individually and jointly from their conspiratorial enterprise—at Plaintiff's expense.

168.   Upon information and belief, Defendants and their employees were jointly aware of the other's acts, and the acts of their agents in furtherance of the conspiracy, and benefited therefrom.

169.   Upon information and belief, Defendants reached an agreement between themselves, as shown by the commercial connection between NY Lottery and Scientific Games, to misappropriate Gameologist Group's federally trademarked concept for lottery scratch-off tickets, and to sell or offer for sale the infringing tickets alleged in this Complaint.

170.   By knowingly producing and selling the infringing tickets and/or by otherwise using the infringing content, Defendants committed overt acts in furtherance of their agreement.

171.   Defendants have committed the acts alleged with previous knowledge of Plaintiff's superior rights to the BLING BLING marks.

172.   The direct and proximate consequence of Defendants' intentional and active agreement and participation in the alleged conspiracy is injury to Plaintiff, which has suffered and will continue to suffer losses and irreparable injury to its business reputation and goodwill.

173.   Defendants will, unless enjoined preliminarily and permanently, continue to conspire to use Plaintiff's trademarks.

174.   By reason of the foregoing, Plaintiff is entitled to damages and injunctive relief against Defendants, restraining additional acts in furtherance of the conspiracy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1.    Preliminarily and permanently enjoining and restraining defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, or having actual notice of this Order, from:

(a)  imitating, copying, or making unauthorized use of Gameologist's BLING BLING trademark, or any variation thereof;

(b)  manufacturing, producing, distributing, advertising, promoting, selling, or offering for sale any scratch-off ticket bearing the BLING BLING marks or any designation confusingly similar thereto;

(c)  using the BLING BLING marks or any designation confusingly similar thereto in connection with the promotion, advertisement, display, sale, offering for sale, or distribution of any lottery product;

(d)  making any designation of origin, descriptions, or representations indicating or suggesting that BLING BLING is the source or sponsor of, or in any way has endorsed or is affiliated with the New York Lottery or Scientific Games;

(f)  engaging in any conduct that tends to dilute, tarnish, or blur the distinctive quality of Gameologist's BLING BLING mark;

(g)  continuing current advertising campaigns using the BLING BLING  mark or any designation confusingly similar thereto;

(h)  aiding or abetting any party in the commission of the acts specified in subparagraphs (a)-(g) above;

31

2.      Ordering New York Lottery and Scientific Games to account to Gameologist for all gains, profits, savings, and advantages obtained as a result of trademark infringement and unfair competition, and awarding to Gameologist restitution in the amount of all such gains, profits, savings, and advantages;

3.      Awarding to Gameologist damages resulting from defendants' unlawful conduct, including the amount by which defendants were unjustly enriched, in an amount to be determined at trial and trebled pursuant to 15 U.S.C. § 1117;

4.      Awarding to Gameologist defendants' profits attributable to their unlawful conduct, in an amount to be determined at trial and increased in the Court's discretion pursuant to 15 U.S.C. § 1117;

5.      Awarding to Gameologist their reasonable attorneys' fees, together with the costs and disbursements of this action;

6.      Awarding Gameologist punitive damages in an amount sufficient to deter other and future similar conduct by the New York Lottery, Scientific Games, and others, in view of their wanton and deliberate unlawful acts; and

7.      Granting Gameologist such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury for all issues so triable in this action.

Dated: New York, New York
      November 21, 2008

                                  Respectfully submitted,

                                    _____

                                    Yasmeen A. Allen
                                    **BALESTRIERE LANZA PLLC**
                                    225 Broadway, Suite 2900
                                    New York, NY 10007
                                    Telephone:   (212) 374-5400
                                    Facsimile:   (212) 208-2613
                                    *Attorneys for Plaintiff*

33

# Exhibit A

Trademark Electronic Search System (TESS)



**United States Patent and Trademark Office**

Home Site Index Search FAQ Glossary Guides Contacts eBusiness eBiz alerts News Help

# Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Thu Nov 20 04:10:11 EST 2008

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | BLING BLING 2002 |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Entertainment in the nature of online three dice casino games. FIRST USE: 20041222. FIRST USE IN COMMERCE: 20041222 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | **78200947** |
| **Filing Date** | January 7, 2003 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | December 2, 2003 |
| **Registration Number** | 2953204 |
| **Registration Date** | May 17, 2005 |
| **Owner** | (REGISTRANT) McGill, Jeffrey INDIVIDUAL UNITED STATES 113 Sassafrass Run Pleasantville NEW JERSEY 08232 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

Trademark Electronic Search System (TESS)



**United States Patent and Trademark Office**

Home  Site Index  Search  FAQ  Glossary  Guides  Contacts  eBusiness  eBiz alerts  News  Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Nov 20 04:10:11 EST 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | Browser Dict | SEARCH OG | BOTTOM | HELP |

Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | ( Use the "Back" button of the Internet Browser to return to TESS)

## Typed Drawing

| | |
|---|---|
| **Word Mark** | BLING BLING 2002 |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Gaming equipment, namely, slot machines with or without video output; video game interactive hand held remote controls for playing electronic games; computerized video games for gaming purposes |
| | IC 028. US 022 023 038 050. G & S: Casino games and equipment therefor, namely, dice, board games, card games, lottery cards, coin-operated video games, hand-held unit for playing electronic games, stand alone video game machines, stand alone video output game machines, and game tables |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | **78311849** |
| **Filing Date** | October 9, 2003 |
| **Current Filing Basis** | 1B |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | February 26, 2008 |
| **Owner** | (APPLICANT) THE GAMEOLOGIST GROUP, LLC LTD LIAB CO NEW JERSEY 3439 ATLANTIC AVENUE ATLANTIC CITY NEW JERSEY 08401 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | DOUGLAS E WHITE |
| **Prior Registrations** | 2953204 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "2002" APART FROM THE MARK AS SHOWN |

Document Description: **Notice of Publication**      Mail / Create Date: **06-Feb-2008**





**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451
www.uspto.gov

Feb 6, 2008

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   78/311,849

2. Mark:
   BLING BLING 2002

3. International Class(es):
   9, 28

4. Publication Date:
   Feb 26, 2008

5. Applicant:
   THE GAMEOLOGIST GROUP, LLC

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA 15250-7954
Phone: 202-512-1800

By direction of the Commissioner.

Correspondence Address:

DOUGLAS E WHITE                              TMP&I
ACRONATIONAL LAW FIRM

**14 CAMINO SOBRANTE**
**ORINDA, CA 94563**

TDR Home

This document may be displayed as a PDF file containing images without text. You may view online or save the entire document by clicking on the file download icon in the upper right corner of this page. [required PDF viewer]
FAQ: Are you seeing only the first page of this PDF document?

*If you need help:*

- **General trademark information:** *Please e-mail TrademarkAssistanceCenter@uspto.gov, or telephone either 571-272-9250 or 1-800-786-9199.*
- **Technical help:** *For instructions on how to use TDR, or help in resolving technical glitches, please e-mail TDR@uspto.gov. If outside of the normal business hours of the USPTO, please e-mail Electronic Business Support, or call 1-800-786-9199.*
- **Questions about USPTO programs:** *Please e-mail USPTO Contact Center (UCC).*

*NOTE: Within any e-mail, please include your telephone number so we can talk to you directly, if necessary. Also, include the relevant serial number or registration number, if existing.*

# Exhibit B



**Gaming Technologies**

October 11, 2002

Joseph Cassarino
Bling Bling
113 Sassafrass Run
Pleasantville, NJ 08232

Dear Stephen,

It was a pleasure to meet you at the World Gaming Conference, and begin to explore the opportunities for partnership our companies may have. As discussed, Oberthur Gaming Technologies is interested in working with you to offer various product and brand images of Bling,Bling on lottery tickets worldwide. Our proven success with other licensed products in the lottery industry will confirm our ability to provide maximum exposure of and market Bling Bling to its full potential. I am forwarding you information on Oberthur Gaming Technologies (OGT) to allow you a glimpse of our manufacturing facilities and corporate model worldwide.

OGT is the leading producer and marketer of scratch off lottery tickets in the world. Our eight offices worldwide make us accessible to all lottery clientele, while our five manufacturing facilities worldwide insure the best product for each market. I have included a fact sheet on OGT for your review and interest. It offers a broader perspective in terms of not only the lottery specific business owned by our parent company, Francois-Charles Oberthur Group (FCO), but the other high security divisions as well.

In terms of instant ticket production, our reputation as a leader in the lottery industry is strengthened by our contracts with 90 lotteries in 50 countries, which includes a clientele list of 20 U.S. Lotteries. Plus we have access to <u>all</u> lotteries worldwide in marketing proprietary games and licensed properties.

In the U.S. market, scratch off instant ticket sales compile on average 60% of a lottery's income, so we are involved with nearly every aspect of each client's business. Additionally, the relationships we hold with these clients are longstanding, and our business is intertwined in the day-to-day activities of each lottery. Plus, because of OGT's global presence, these types of relationships extend around the world. Certainly, being "local" in every worldwide market is key to all lottery customers.



**Oberthur Gaming Technologies Corp.**

9999 Westover Hils Blvd., San Antonio, TX 78251-4198 U.S.A. ● Tel.: (210) 509-9999 ● Fax: (210) 509-2930
www.oberthurgt.com



2.

*Confidential*



Recent months have seen the term "Bling Bling™" widely associated with major sporting events and the "prize" athletes take home from these events, such as a Superbowl Ring. For this reason, we suggest a promotion that ties in with one or more of these events, such as the SuperBowl, World Series or Stanley Cup.

We would encourage the lottery to give radio stations in key markets Bling Bling™ lottery tickets for the following contest.

> Radio #1: Contestants call-in with their best "Bling Bling" story (e.g. best sports win, Finding a $100 bill, etc.). The winner gets Bling Bling™ tickets, and is entered into a drawing for a trip to the major sporting event. Through a partnership we have with a global travel-promotions company, we would arrange trips that would include first class airfare to the destination, VIP arrangements and tickets to the event, hotel accommodations, spending cash, etc.

And this is only one game! We are already working on other versions of Bling Bling™ scratch tickets. OGT will roll-out these new games in a strategically timed manner to keep the Bling Bling™ product line fresh and keep players coming back to buy more tickets with games such *Wild Spin Bling Bling™, Bling Bling™ Game Night and Super 7s Bling Bling™*.

Perhaps most appealing about our plans for these Bling Bling™ products is that regardless of the "generation" of the ticket design, OGT has also developed promotional legs with a broader appeal to aid lotteries in reaching every ticket purchaser! We plan to create games such as *Bling Bling™ in Rio de Janeiro, Holiday Bling Bling™* and *The Zales** Bling Bling™ Extravaganza.*

For instance, *The "Jewelry Chain" Bling Bling™ Extravaganza* instant game would include either a top prize of $20,000, or through a national jewelry chain, diamonds, jewelry and cash worth $20,000. Since a common form of advertising for jewelry store chains and for lotteries is radio, it is the perfect vehicle to attract players. We would encourage the lottery to give radio stations in key markets Bling Bling™ lottery tickets for the following contests.

> Radio #1: For a month, listeners would be instructed on a specific Saturday to bring non-winning *The "Jewelry Chain" Bling Bling™ Extravaganza* tickets to a set location to be entered in *The "Jewelry Chain" Bling Bling™ Hunt*. The concept is basically a scavenger hunt throughout the city to find the "Bling Bling" (a diamond or other piece of jewelry from a local or national jeweler). With a non-winning ticket, players receive a notecard with the first "clue" that instructs them to the next checkpoint of the scavenger hunt. Upon finding the second landmark of the

*Confidential*

scavenger hunt, the player receives a piece of a puzzle (the completed puzzle is in the shape of a diamond). The puzzle piece has another clue on the back, and the player continues until he has completed the puzzle. The first player to "solve" the puzzle wins the diamond.

Radio #2: Contestants call-in with their best "Bling Bling" story (e.g. Finding a $100 bill, winning a poker game, etc.). The winner gets a Bling Bling™ ticket, and is entered into a drawing for a gift certificate at the national jewelry store chain. Each week, a grand-prize-winner is drawn, and gets the "Bling Bling".

*Bling Bling™ in Rio de Janeiro (option: Bling Bling™ in Vegas)* would feature Bling Bling™ on a $5 ticket with various casino games. Other games might include Blackjack, a Slot machine and a High Card game. Typically on such a game, the top prize ranges from $50,000 - $100,000. We suggest the same, plus a bonus box where a player could win the real "Bling Bling" - a trip to Rio de Janeiro, Monte Carlo, Las Vegas or Atlantis. Through our agreement with our travel-promotions partner, we would arrange trips that would include first class airfare to the destination, VIP arrangements and hotel accommodations, casino spending cash, etc.

Beyond the scratch ticket, the opportunities are even bigger. Once the lottery has introduced the Bling Bling™ scratch ticket, the next step is into the electronic era. We envision the lottery start with the scratch ticket, then evolve into the CD-ROM or website game, and then the mobile phone (or other handheld communication device, such as a Palm) game. Below are descriptions of how we envision this evolution of Bling Bling™. Clearly OGT is the innovator in the lottery business, with our fingers on the pulse of the "next big ideas", so beyond these ideas you will find the development of even more.

OGT has a relationship with a veteran corporation in the lottery industry to develop our licensed products electronically, be it on a CD-ROM or website version of Bling Bling™. We obviously work closely with our clients to incorporate these into a well-rounded strategy that includes strong marketing support for long term growth.

## CD-ROM Bling Bling™ Game

The CD-ROM game works like this: The player visits a lottery retailer and purchases a Bling Bling™ starter kit, which includes multiple tickets (number of tickets in each starter kit determined by each lottery and the game) and an animated Bling Bling™ game on a CD-ROM. Note: This allows the lottery to restrict purchases within the jurisdiction it has rights to sell tickets, and police age restrictions (lottery retailers are penalized for selling to minors according to state law).

*Confidential*

As you can see, the opportunities in partnering with OGT are enormous.  We have additional game designs and promotions we look forward to sharing with you as our partnership develops.

## Marketplace and Financial Arrangements

What's important to remember about lottery tickets is that unlike most consumer goods, the packaging IS the product.  Therefore, every single ticket is not only an impression of the property in the marketplace, but actually *requires* consumer interaction, increasing its market value.  *This number will be substantially increased through direction of players to the lottery's website (and yours), point of sale, public relations efforts, advertising, etc.*

Plus, lottery advertising for licensed games generally exceeds that of a "typical" scratch-off game.  For example, the media buy for a licensed property usually includes an average of three (3) weeks of radio and/or television at an average 200 GRP's, although this (as you can expect) varies by state and market.  Radio and television usually accompany point of sale advertising and sometimes print, too.

Since scratch tickets are primarily impulse items, lotteries rely heavily on product placement and point of sale advertising for these products.  For each retailer who sells tickets, lotteries usually produce two (2) at-register point of sale pieces, and one (1) larger piece such as a mobile (dangler) or poster, for a total of three (3) pieces at each retail location. The number of retailers vary from state to state, but using industry data coupled with our projections, Bling Bling™ can expect to see more than 26,000 retailers showcasing your property, for a total of more than 35 *million* point of sale impressions.

These numbers are an estimation of the market attention OGT can generate over the course of 36 months in the United States.  We envision the financial arrangement to provide The Gameologist Group with part of the licensing and royalty fees each state pays.  Although these projections are based only in the United States, we plan to definitely reach out to our international divisions, too.

The projections OGT has made are drawn from actual experience in licensed products and based on reasonable licensing fees to lotteries.  We would rather see ten lotteries run a Bling Bling™ game at a less expensive fee, than one lottery run it at an overpriced fee. If your product is marketed with a very high fee, your exposure is depleted, and a new market goes untapped.  Given all this, in the politically influenced industry in which we operate, there are still unknowns.  There are entities who can stifle the growth of your product unless it is carefully monitored and launched in a socially responsible way.  OGT has always, and will continue to operate its business in this manner.  Your choice in OGT as an exclusive partner will be your best.

*Confidential*



The player then loads the Bling Bling™ CD-ROM on his computer.  He scratches the designated play area on each Bling Bling™ ticket to reveal a PIN number.  The player enters the PIN number into his computer, and plays the animated Bling Bling™ game to see if he has won.   If the play is a winner, the player takes the ticket back to the retailer to claim his prize.

The lottery also makes available for players individually sold scratch tickets for the CD-ROM Bling Bling™ game, so the player can continue playing the game without purchasing additional starter kits.   He can also share the Bling Bling™ CD-ROM, so friends and colleagues can play without having to purchase a starter kit.

## Bling Bling™ Lottery Website Game

The website game is another way to bring an electronic version of Bling Bling™ to the lottery industry: This scenario incorporates the instant ticket the same way the CD-ROM game does, except instead of playing the game off a CD-ROM, the player is directed to the lottery's website and plays a secure Bling Bling™ game there. (Note: Because the player must purchase tickets to play at the lottery retailer, this scenario still enables the lottery to restrict purchases within the jurisdiction it has rights to sell tickets, as well as police age restrictions according to state and/or national law.)

## Bling Bling™ Mobile Lottery Game

As described, the next step in OGT's multi-media approach to Bling Bling™ is our patent-pending mobile phone (or other handheld device) game. This scenario incorporates instant tickets in the same way the previous scenarios did, except instead of playing the game off the lottery's website or a CD-ROM, the ticket purchased features a toll free telephone number and a Text Message Code. The player sends the Text Message alphanumeric code to the toll-free number and then receives information from his cell phone, which allows him to play the game.  This information will determine if the ticket is a winner or a non-winner.

For example, if the player purchases a Bling Bling™ ticket, on the ticket would be multiple games covered with scratch off, each of which contained the "Dealer's Spin". For each game, there would also be a Text Message Code.   The player sends the Text Message Code to the phone number listed on the ticket, and receives (for each game), "Your Rolls".   The player keeps getting Rolls until he either wins or loses (just like Bling Bling™!).  In each game, if "Your Roll" beats the "Dealer's Spin", the player wins the prize for that game. (Note:  Because the player still must purchase tickets to play at the lottery retailer, this scenario still enables the lottery to restrict purchases within the jurisdiction it has rights to sell tickets, as well as police age restrictions according to state and/or national law.)



*Confidential*

We also know The Gameologist Group brings to the table many elements in this partnership, and we look forward to working with you to incorporate these. We understand we will be able to utilize standard Bling Bling™ images, as well as any that are developed in the future. When a lottery has contracted to sell one of these licensed games, it will expect to also have the rights to use the ticket art and ticket graphics in its point of sale, television, radio, print, transit and outdoor advertising. As a standard procedure, The Gameologist Group maintains the right to approve any and all art/materials utilizing Bling Bling™ prior to release.

As part of an exclusive agreement between our companies, we will guarantee The Gameologist Group thirty percent (30%) of the licensing and royalty fees based on the projected sales of a game. We believe in partnering with forward thinking companies like The Gameologist Group, and are confident that this will be a mutually beneficial relationship.

I hope this information is sufficient in fulfilling your request for an outline of OGT's plan for Bling Bling™. If you have any questions, please do not hesitate to call. I look forward to hearing from you soon.

Best Regards,

Carla M. Schaefer
VP, New Business Development
Oberthur Gaming Technologies
9999 Westover Hills Blvd
San Antonio, TX 78209

# Exhibit C

New MDI Agreement Will Bring Bling Bling™ to Lottery Players; Popular Hip-Hop Expression Moving from Young Adult, Urban Market Into Mainstream Culture

ALPHARETTA, Georgia (January 30, 2004) — MDI Entertainment, a wholly-owned subsidiary of Scientific Games, has signed a three-year agreement with THE GAMEOLOGIST GROUP, LLC for the worldwide lottery industry licensing rights to the name and marks of Bling Bling™. The agreement extends through December 2006 and covers instant and on-line lottery games and promotions, including tickets, point-of-sale and broadcast and print advertising.



**Bling Bling — cool, in vogue or over the top.**
"Bling Bling is a four-year-old expression whose origin can be traced to hip-hop music and the young adult, urban market, which today comprises about 45 percent of the U.S. population," said Steve Saferin, President of MDI. "Recently, the term has made its way into mainstream culture and, as a result, has begun to attract more and more advertising dollars from Fortune 500 consumer goods companies looking to appeal to young adults. We believe the Bling Bling property would lend itself nicely, for example, to a Diamonds and Dollars-themed game, or perhaps to a game called Bling Bling Fling that offered high-end items such as expensive jewelry, luxury automobiles, exotic vacations or state-of-art electronics."

**But just what is Bling Bling?**
The term has its commercial roots in a 1999 song by a New Orleans musical artist named B.G., a member of the rap group Cash Money Millionaires. Originally used to describe diamonds, jewelry and other forms of showy style, Bling Bling has since broadened to include all things "cool, in vogue or over the top." That could mean riding in the newest high-end luxury automobile or SUV, taking a cruise to an exotic island, or enjoying the high-energy excitement of a weekend getaway to Las Vegas.

Bling Bling gained mainstream traction in 2001 when the words were inscribed in diamonds on the NBA championship ring of the Los Angeles Lakers, and its superstar center, Shaquille O'Neal, used the term as he flashed his new piece of jewelry to media.
Advertisement

Today, it is not uncommon to hear or see the Bling Bling expression in various mainstream media, including, for example, MTV, BET, CNN, the Wall Street Journal and The Tonight Show with Jay Leno, and in billboard advertising for companies like Citibank and Helzberg Diamonds stores. The term will even appear in the next updated volume of the venerable Oxford English Dictionary.

"The fact that Bling Bling is expected to be inducted into the newest version of the Oxford Dictionary is the clearest evidence to date that the term is becoming a mainstream cultural phenomenon," said Saferin. "And while Bling Bling is not for everyone, we believe it's the ideal licensed property for marketers looking to launch a clever, edgy, super-cool niche game aimed at a young adult demographic."

**About Scientific Games**
Scientific Games Corporation is the leading integrated supplier of instant tickets, systems and services to lotteries, and the leading supplier of wagering systems and services to pari-mutuel operators. It is also a licensed pari-mutuel gaming operator in Connecticut and the Netherlands and is a leading supplier of prepaid phone cards to telephone companies. Scientific Games' customers are in the United States and more than 60 other countries. For more information about Scientific Games, please visit our web site at www.scientificgames.com
SOURCE: Scientific Games.
CONTACT: Bob Kowalczyk, Phone: 678-297-5169

# Exhibit D



Tuesday, August 5, 2008 - Springfield's New Choice For Local News

Search





Voted Best Weathercast
by the Associated Press

News   Weather   Sports   News Links   Storm Closings   Contact Us   About Us   Features   Community   What's On CBS 3

Local News Archive   National and World   Health   Entertainment   Business



Weather



**64 °F**
Current Temp

Fair

Wind : From the North at 3 MPH
Humidity : 95 %
Pressure : 29.93" (1013.5 mb)

Story Published: Sep 1, 2008 at 12:10 AM EDT
Story Updated: Sep 19, 2007 at 12:11 PM EDT

ATLANTIC CITY, N.J. -- BLING BLING 2002, a new board game based on Hip Hop's favorite dice game, C-LO, has been introduced to the market by two Atlantic City-based, minority-owned companies.

Geared to the urban youth market, the game capitalizes on the notoriety of C-LO, which has been played in music videos of such Hip Hop and RandB stars as Biggie Smalls, Jay Z, Nas, Cameron and many others.

BLING BLING includes a sound track and a documentary DVD with tracks which are exclusive to the game, together with interviews by Hip Hop artists, including Nu Jersey Devil, DJ Envy, Jim Jones, Sam Scarfo, Riz, DJ Feh, Black Rob, Big Smoke and The King of Kings, among others.

The Hip Hop community has been quick to react. Def Jam artist Sam Scarfo said, "This game is definitely for the Hustlers."; Black Wall Street artist Nu Jersey Devil commented, "It's one of the hottest games I've ever played."; Bad Boy artist Black Rob exclaimed, "What? That's crazy! I won mad money playing C-LO. Make sure I get a board game!"; Universal Recording artist Merino said, "The hood is going to love you for this!"; and Dipset's Jim Jones quipped, "C-LO on a board game is a beautiful thing!"

Players become adventurers in an inner city setting, trying to gather up as much money and property as possible in the 30 to 60 minutes that it takes to play. Using the popular C-LO game play to move on the board and accumulate cash and property with which to erect urban city projects, players encounter ups and downs in the process of their turn.

They can win or lose money, move their playing piece to "The Bank Statement," or play "C-LO Heads Up" with the Bank for cash or land on "Now What?" and find their fate in the unfortunate and sometimes hilarious inner city "hoods." The player that acquires most of the cash and property, is crowned "Ultimate Hustler," a title which brings with it opportunities for bragging and "talking trash."

"The timing is right to introduce the BLING BLING 2002(TM) line of games to mainstream audiences," said CEO Jeff McGill, adds SMOKE. "BLING BLING is a game that the inner city demographic can relate to: the lingo, the situations, the pit falls and the come ups," he continued.

Intended for two to eight players, the board game is the "Ultimate Hustler's game," according to McGill, who said that the new release is subtitled, "Part 1, The Takeover," and that it is the first in a series of Hip Hop games planned for release in 2008.

A portion of proceeds from the sale of the all games will be donated to The Gameologist Group Community Trust, and the funds distributed to non-profit groups which provide assistance to inner city residents of metropolitan Atlantic City.

The Gameologist Group, LLC is a minority-owned game development company that creates and designs games, including casino slot machines, casino table games, board games, lottery card games and video games, most of which are Hip Hop-inspired. The Gameologist Group LLC is developing a BLING BLING scratch off Lottery card to be released soon.









On Demand

Video On Demand

RSS Feeds

Stock Quotes







**Most Popular**

- Man Rushed To Hospital By Helicopter
- Family Looks For Answers About Son's Death
- Memorial Motorcycle Ride for Ware Teen
- Chimney Fire at Downtown Restaurant
- Boaters Return As Fuel Prices Drop
- Holyoke Officials Protest Suspension
- Benefit to be Held for Anthony Day
- Clark Rockefeller Arrested in Baltimore
- Broadband Internet Comes to Under-served Areas
- Teens Engage in Sexting



**KEYT3**
**[Where the News Comes First]**

Mon, Sep 18, 2006      "Day Fire" Inches Towards Ojai      Health Advisory Extended: Harmful Smoke F

ENTERTAINMENT

HOME
NEWS
LOCAL
CALIFORNIA
US/WORLD
WEATHER
SPORTS
LOCAL
NATIONAL
FFF
HEALTH
ENTERTAINMENT
CONTESTS
CALENDAR
PROGRAMS
ABOUT KEYT
KEYT NEWS TEAM
CONTACT US
KEYT JOBS
ADVERTISE
KEYT PRODUCTION

### New Hip Hop Board Game Introduced to Urban Market

ATLANTIC CITY, N.J. -- BLING BLING 2002, a new board game based on Hip Hop's favorite dice game, C-LO, has been introduced to the market by two Atlantic City-based, minority-owned companies.

Geared to the urban youth market, the game capitalizes on the notoriety of C-LO, which has been played in music videos of such Hip Hop and RandB stars as Biggie Smalls, Jay Z, Nas, Cameron and many others.

BLING BLING includes a sound track and a documentary DVD with tracks which are exclusive to the game, together with interviews by Hip Hop artists, including Nu Jersey Devil, DJ Envy, Jim Jones, Sam Scarfo, Riz, DJ Fah, Black Rob, Big Smoke and The King of Kings, among others.

The Hip Hop community has been quick to react. Def Jam artist Sam Scarfo said, "This game is definitely for the Hustlers."; Black Wall Street artist Nu Jersey Devil commented, "It's one of the hottest games I've ever played."; Bad Boy artist Black Rob exclaimed, "What? That's crazy! I won mad money playing C-LO. Make sure I get a board game!"; Universal Recording artist Merlino said, "The hood is going to love you for this!"; and Dipset's Jim Jones quipped, "C-LO on a board game is a beautiful thing!"

Players become adventurers in an inner city setting, trying to gather up as much money and property as possible in the 30 to 60 minutes that it takes to play. Using the popular C-LO game play to move on the board and accumulate cash and property with which to erect urban city projects, players encounter ups and downs in the process of their turn.

They can win or lose money, move their playing piece to "The Bank Statement," or play "C-LO Heads Up" with the Bank for cash or land on "Now Whut?" and find their fate in the unfortunate and sometimes hilarious inner city "hoods." The player that acquires most of the cash and property, is crowned "Ultimate Hustler," a title which brings with it opportunities for bragging and "talking trash."

"The timing is right to introduce the BLING BLING 2002(TM) line of games to mainstream audiences," said CEO Jeff McGill, a/k/a SMOKE. "BLING BLING is a game that the inner city demographic can relate to: the lingo, the situations, the pit falls and the come ups," he continued.

Intended for two to eight players, the board game is the "Ultimate Hustler's game," according to McGill, who said that the new release is subtitled, "Part 1, The Takeover," and that it is the first in a series of Hip Hop games planned for release in 2006.

A portion of proceeds from the sale of the all games will be donated to The Gameologist Group Community Trust, and the funds distributed to non-profit groups which provide assistance to inner city residents of metropolitan Atlantic City.

The Gameologist Group, LLC is a minority-owned game development company that creates and designs games, including casino slot machines, casino table games, board games, lottery card games and video games, most of which are Hip Hop-inspired. The Gameologist Group LLC is developing a BLING BLING scratch off Lottery card to be released soon.

KEYT      Web
Search

February 29, 2008 Binghamton, NY



**News**  **Weather**  **Sports**  **Features**  **YouNewsTV**  **Programming**  **Inside WBNG**  **Closings**

**Local & Regional**  **US & World**  **Business**  **Health**  **WBNG/WBXI Advertisers**  **CBS Political**







⊕⇧ SAVE THIS

⊕✉ EMAIL THIS

⊕🖨 PRINT THIS

⊕☆ MOST POPULAR

YouNewsTV™

**Storm Tracker Weather**

## 21 °F
Current Temp

Fair

Wind : From the South at 10 Gusting to 22 MPH
Humidity : 54 %
Pressure : 30.26" (1028.2 mb)

**More Weather**

**On Demand**

 **Desktop News**

 **RSS Feeds**

 **Video On Demand**

 **Mobile**

Story Created: Sep 1, 2006 at 12:10 AM EST
Story Updated: Sep 19, 2007 at 12:11 PM EST

ATLANTIC CITY, N.J. — BLING BLING 2002, a new board game based on Hip Hop's favorite dice game, C-LO, has been introduced to the market by two Atlantic City-based, minority-owned companies.

Geared to the urban youth market, the game capitalizes on the notoriety of C-LO, which has been played in music videos of such Hip Hop and RandB stars as Biggie Smalls, Jay Z, Nas, Cameron and many others.

BLING BLING includes a sound track and a documentary DVD with tracks which are exclusive to the game, together with interviews by Hip Hop artists, including Nu Jersey Devil, DJ Envy, Jim Jones, Sam Scarfo, Riz, DJ Fah, Black Rob, Big Smoke and The King of Kings, among others.

The Hip Hop community has been quick to react. Def Jam artist Sam Scarfo said, "This game is definitely for the Hustlers."; Black Wall Street artist Nu Jersey Devil commented, "It's one of the hottest games I've ever played."; Bad Boy artist Black Rob exclaimed, "What? That's crazy I won mad money playing C-LO. Make sure I get a board game!"; Universal Recording artist Merlino said, "The hood is going to love you for this!"; and Dipset's Jim Jones quipped, "C-LO on a board game is a beautiful thing!"

Players become adventurers in an inner city setting, trying to gather up as much money and property as possible in the 30 to 60 minutes that it takes to play. Using the popular C-LO game play to move on the board and accumulate cash and property with which to erect urban city projects, players encounter ups and downs in the process of their turn.

They can win or lose money, move their playing piece to "The Bank Statement," or play "C-LO Heads Up" with the Bank for cash or land on "Now Whut?" and find their fate in the unfortunate and sometimes hilarious inner city "hoods." The player

**AP Video**


Prince Harry Returns Fight From Afghanistan
▶ Play


Rioks Forced In Las Vegas Blaze
▶ Play


Old Navy Worker Allegedly Peeping Tom
▶ Play

that acquires most of the cash and property, is crowned "Ultimate Hustler," a title which brings with it opportunities for bragging and "talking trash."

"The timing is right to introduce the BLING BLING 2002(TM) line of games to mainstream audiences," said CEO Jeff McGill, a/k/a SMOKE. "BLING BLING is a game that the inner city demographic can relate to: the lingo, the situations, the pit falls and the come ups," he continued.

Intended for two to eight players, the board game is the "Ultimate Hustler's game," according to McGill, who said that the new release is subtitled, "Part 1, The Takeover," and that it is the first in a series of Hip Hop games planned for release in 2006.

A portion of proceeds from the sale of the all games will be donated to The Gameologist Group Community Trust, and the funds distributed to non-profit groups which provide assistance to inner city residents of metropolitan Atlantic City.

The Gameologist Group, LLC is a minority-owned game development company that creates and designs games, including casino slot machines, casino table games, board games, lottery card games and video games, most of which are Hip Hop-inspired. The Gameologist Group LLC is developing a BLING BLING scratch off Lottery card to be released soon.

**Hip Hop Music And Videos**
Keep Yourself Updated on The Latest Releases. Visit Our Website Today!
www.GlobalGrind.com

**Get Hip Hop Music Songs**
Free & Legal Music Downloads. Get Your Favorite Song or Artist Today!
www.SpiralFrog.com

**Board game**
Browse a huge selection now. Find exactly what you want today.
www.eBay.com

**Hip hop music**
Find new music from the world's top new artists. Try it free.
FameCast.com



**Stock Quotes**

NYSE

| Symbol | Last Chng. |
| --- | --- |
| NYSE | 9,052.29 -169.59 |
| NASDAQ | 2,296.38 -35.19 |
| AMEX | 2,329.05 -35.24 |

1:24 PM ET 2/29/08
disclaimer

**Hip Hop Mixtape**
Upload Your Music And Videos And Let Fans Decide! Get Discovered.
www.OurStage.com

# 7online.com abc 7
WABC-TV WABC-DT New York

## New Hip Hop Board Game Introduced to Urban Market Based on C-LO Game Play



The Gameologist Group LLC and 456productions.com have introduced a new Board game based on the popular three dice game known as Cee-LO. BLING BLING 2002(TM) The Takeover Part 1 is an exciting new table game played at home or outdoors using the popular three dice Cee-LO game play. Be sure to visit 456productions.com to view or order this exciting new game. The Gameologist Group LLC is introducing BLING BLING scratch off Lottery cards and BLING BLING slot machines in the near future. BLINGBLING2002 is a registered trademark of the Gameologist Group LLC. (PRNewsFoto/The Gameologist Group, LLC)

ATLANTIC CITY, NJ UNITED STATES

ATLANTIC CITY, N.J., Aug. 28 /PRNewswire/ -- BLING BLING 2002(TM), a new board game based on Hip Hop's favorite dice game, C-LO, has been introduced to the market by The Gameologist Group LLC and 456 Productions.com, two Atlantic City-based, minority-owned companies. Geared to the urban youth market, the game capitalizes on the notoriety of C-LO, which has been played in music videos of such Hip Hop and R&B stars as Biggie Smalls, Jay Z, Nas, Cameron and many others.

(Photo: http://www.newscom.com/cgi-bin/prnh/20040828/NYSA108 )

BLING BLING includes a sound track and a documentary DVD with tracks which are exclusive to the game, together with interviews by Hip Hop artists, including Nu Jersey Devil, DJ Envy, Jim Jones, Sam Scarfo, Riz, DJ Fah, Black Rob, Big Smoke and The King of Kings, among others.

The Hip Hop community has been quick to react. Def Jam artist Sam Scarfo said, "This game is definitely for the Hustlers."; Black Wall Street artist Nu Jersey Devil commented, "It's one of the hottest games I've ever played."; Bad Boy artist Black Rob exclaimed, "What? That's crazy! I won mad money playing C-LO. Make sure I get a board game!"; Universal Recording artist Merlino said, "The hood is going to love you for this!"; and Dipset's Jim Jones quipped, "C-LO on a board game is a beautiful thing!"

Players become adventurers in an inner city setting, trying to gather up as much money and property as possible in the 30 to 60 minutes that it takes to play. Using the popular C-LO game play to move on the board and accumulate cash and property with which to erect urban city projects, players encounter ups and downs in the process of their turn. They can win or lose money, move their playing piece to "The Bank Statement," or play "C-LO Heads Up" with the Bank for cash or land on "Now What?" and find their fate in the unfortunate and sometimes hilarious inner city "hoods." The player that acquires most of the cash and property, is crowned "Ultimate Hustler," a title which brings with it opportunities for bragging and "talking trash."

"The timing is right to introduce the BLING BLING 2002(TM) line of games to mainstream audiences," said CEO Jeff McGill, a/k/a SHORE. "BLING BLING is a game that the inner city demographic can relate to: the lingo, the situations, the pit falls and the come ups," he continued. Intended for two to eight players, the board game is the "Ultimate Hustler's game," according to McGill, who said that the new release is subtitled, "Part 1, The Takeover," and that it is the first in a series of Hip Hop games planned for release in 2006.

A portion of proceeds from the sale of the all games will be donated to The Gameologist Group Community Trust, and the funds distributed to

SOUTHERN OCEAN COUNTY EDITION



# The Press
### OF ATLANTIC CITY

MARCH 31, 2004

WEATHER: High 45, Low 42. Cloudy, Page A2

## INSIDE

**MONEY DEAD IN LUMBER STAR**

A series of explosions and shootouts in Uzbekistan leaves another two dozen people dead
Page A3

**LOW-CARB COPYCATS**

Large restaurant chains are catching up with local eateries by serving protein, burgers and salads topped with chicken.
Page B4

**ALISTAIR COOKE DIES**

Letters from Alistair Cooke, longtime host of the nation's "Masterpiece Theater," dies in his adopted country at age 95.
Page B1

**CAN TRUMP HOLD ON?**

Analysts say there is 'substantial doubt' about the ability of Trump Hotels to survive.
Page D6

**SIXERS LOSE IVERSON**

The 76ers announce that Allen Iverson is out for the rest of the regular season with a knee injury.
Page D1

## Miss A pageant saw $700,000 operating loss in '03

### However, success with investment portfolio helped to offset deficit, bring net assets up

By DEREK HARPER



McMASTER

---

## Bada bling

### EHC man develops lottery game based on street-corner gambling





Joel McGill, left, along with Jason Keys, center, and Stephan Jackson say they hope to issue New York and New Jersey to adopt the lottery game that McGill created, called "Bling Bling." A "Bling Bling" ticket is shown above.

By J. STAAS HAMETT

---

## Bush will let Rice go public

### President will also take 9-11 panel's private questions

By MIKE ALLEN and DAN EGGEN
The Washington Post

WASHINGTON — President Bush reversed himself under political pressure Tuesday and agreed to permit his national security adviser, Condoleezza Rice, to testify in public and under oath before an independent commission investigating the attacks of Sept. 11, 2001.

---

## Dredging sends legal muck flying in Cape

By RICHARD DEGENER

LOWER TOWNSHIP —



Stone Harbor's dredge spoils were transported to Cook House on March 25. The borough faces hours flying over silica.

---

## Fight for president enters cyberspace

### Web offers growing audience, fewer limits

By RICK ANDERSON
Los Angeles Times

WASHINGTON — As the Democratic and Republican presidential campaigns pound each other through television commercials, some of their strategies are looking beyond channeled media to new audiences that may be ready for a new type of political advertising: Web-driven.

**Decision RACE '04**



## Step 6: Final Review

*Please review the updated information below. Press the "Continue" button at the bottom of*
*are finished, or the "Make More Changes" button, if you want to make additional changes nov*

### The Gameologist Group, LLC

The Gameologist Group LLC, is a leading game development company producing fun and exciting Hip Hop and Urba
Our games are targeted to the young, cool and cutting edge gaming enthusiast. They are fun, exciting, and quite simp
Our games do not include violence or portray negative sentiment. "BLING BLING The Takeover Part 1" the board gar
game based on the popular three dice, C-LO street game. Our new BLING BLING board game utilizes the popular th
gameplay and is taking the country by storm. Mostly everyone in the urban and hip hop community play C-LO on the
college campuses. Now you can play C-LO at home in the form of our hilarious and fun BLING BLING board game ta
aged 13 and up. Players become adventurers in an inner city setting, trying to gather up as much money and propert
30 to 60 minutes it takes to play. Using the popular C-LO game play to move on the board and accumulate cash and
which to erect urban city projects, players encounter ups and downs in the process of their turn. They can win or lose
playing piece to "The Bank Statement" or play C-LO Heads Up with the Bank for cash or land on "Now Whut?" and fi
unfortunate and sometimes hilarious inner city hoods. The player that acquires the most cash and property is crowne
Hustler" a title which brings with it opportunities for bragging and talking trash. "The Gameologist Group LLC put the l
gameBLING". Looking for a new way to attract the the young, flashy, celebrity type to your casino? You need a little E
Bling Bling Slots Machines! The first R & B and Hip Hop Slot Machines ever. Guaranteed to raise the drop. Bling Blin
games have instant approval from the young, fly and hip hop clientele. (21 to 45 age group)AND THIS IS ONLY THE
games will bring a new, fresh, exciting flavor to any casino floor! Make sure to Try our games on cruise lines, private
resorts, casinos, etc. CALL US TODAY FOR MORE INFORMATION at 609-553-7979, or visit our website at 456proc
The Gameologist Group LLC is introducing BLING BLING scratch off Lottery cards.
Make sure to ask your local Lotto retailer for the new BLING BLING instant scratch off Lottery card game. The Game
is a minority owned company. A percentage of income will be placed into "The Gameologist Group Community Trust"
to inner city youth programs and non profit operating grants. We hope you like our games. You may play a free BLIN
machine game by visiting our website at 456productions.com Just click on the link Gameologist Group then hit Max E
Make sure to turn your volume up because the hip hop beats are cool. This is one fun game to play and it is totally fr

### Products and Services

Gaming Equipment and Supplies > Game Development > Game Design > Casino, Internet, Slot and Table Games
BLING BLING- an exciting table game, rich in tradition, craps sized table, Bling Wheel, Excellent house advantage (2.4879
bet options; up to 14 active players. "Feel Cool, Get Bling"

Gaming Equipment and Supplies > Game Development > New Game Licensing > Slot Machine Games
BLING BLING slot machine casino games featuring hip hop music. The newest slot machine game favored by the young an
players. "We put the Bling in gameBLING"

### Headquarters

| | |
|---|---|
| Phone: | (845) 206-8104 |
| Website: | The Gameologist Group, LLC |
| | |
| Upper Management: | Mr. Joseph Victor Cassarino, CEO |
| | blingblinggames@aol.com |

### Additional Information

*SINCE 2003*



December 22, 2007 6:06:27 PM

brought to you by:

TDmonthly > ToyFair Preview > Board Games > BLING BLING        Previous | Next

Magazine Home    ToyFair Preview    Holiday Gift Guide    Reviews

Search
ToyFair Preview

Company Name ▼    Search

# BLING BLING



This ToyFair Preview was last updated on 12/4/2006

-ToyDirectory Member Since 2006-

**BLING BLING** The new board game based on Hip Hop's favorite dice game C-LO. Geared to the hip hop and urban market, the game capitalizes on the notoriety of C-LO which has been played in music videos of such Hip Hop and R&B stars as Biggie Smalls, Jay Z, Nas, Cameron and many others. C-LO is a game played on college campuses and in urban communities around the country and around the globe. The Gameologist Group LLC has designed the exciting and hilarious board game, based on the popular C-LO and 456 game play. The winner is crowned The Ultimate Hustler. This game is sure to excite every hip hop enthusiast. BLING BLING has been introduced to the market by The Gameologist Group LLC and 456 Productions.com, two Atlantic City minority owned companies. For additional information visit 456productions.com to learn more.

Visitors to the 456productions.com website may play a free BLING BLING slot machine game by clicking on the Gameologist Group link and hitting Max Bet then the Spin button. Turn your volume up to hear the hip hop beats. Look for BLING BLING scratch off Lottery cards at your local Lotto retailer coming soon by The Gameologist Group LLC.

**BLING BLING Board Game 2-8 Players**



BLING BLING The Takeover Part 1



BLING BLING The TAKEOVER Part 2



Home   Send Release   Today's News   Multimedia   Industry & Markets   International   Investor News   RSS   Our Services   About Us   Contact Us

**New Hip Hop Board Game Introduced to Urban Market Based on C-LO Game Play**



The Gameologist Group LLC and 456productions.com have introduced a new Board game based on the popular three dice game known as Cee-LO. BLING BLING 2002(TM) The Takeover Part 1 is an exciting new table game played at home or outdoors using the popular three dice Cee-LO game play. Be sure to visit 456productions.com to view or order this exciting new game. The Gameologist Group LLC is introducing BLING BLING scratch off Lottery cards and BLING BLING slot machines in the near future. BLINGBLING2002 is a registered trademark of the Gameologist Group LLC. (PRNewsFoto/The Gameologist Group, LLC)

ATLANTIC CITY, NJ UNITED STATES

ATLANTIC CITY, N.J., Aug. 28 /PRNewswire/ -- BLING BLING 2002(TM), a new board game based on Hip Hop's favorite dice game, C-LO, has been introduced to the market by The Gameologist Group LLC and 456 Productions.com, two Atlantic City-based, minority-owned companies. Geared to the urban youth market, the game capitalizes on the notoriety of C-LO, which has been played in music videos of such Hip Hop and R&B stars as Biggie Smalls, Jay Z, Nas, Cameron and many others.

(Photo: http://www.newscom.com/cgi-bin/prnh/20060828/nythu114 )

BLING BLING includes a sound track and a documentary DVD with tracks which are exclusive to the game, together with interviews by Hip Hop artists, including Nu Jersey Devil, DJ Envy, Jim Jones, Sam Scarfo, Riz, DJ Fah, Black Rob, Big Smoke and The King of Kings, among others.

The Hip Hop community has been quick to react. Def Jam artist Sam Scarfo said, "This game is definitely for the Hustlers."; Black Wall Street artist Nu Jersey Devil commented, "It's one of the hottest games I've ever played."; Bad Boy artist Black Rob exclaimed, "What? That's crazy! I won mad money playing C-LO. Make sure I got a board game!"; Universal Recording artist Merlino said, "The hood is going to love you for this!"; and Dipset's Jim Jones quipped, "C-LO on a board game is a beautiful thing!"

Players become adventurers in an inner city setting, trying to gather up as much money and property as possible in the 30 to 60 minutes that it takes to play. Using the popular C-LO game play to move on the board and accumulate cash and property with which to erect urban city projects, players encounter ups and downs in the process of their turn. They can win or lose money, move their playing piece to "The Bank Statement," or play "C-LO Heads Up" with the Bank for cash or land on "Now Whut?" and find their fate in the unfortunate and sometimes hilarious inner city "hoods." The player that acquires most of the cash and property, is crowned "Ultimate Hustler," a title which brings with it opportunities for bragging and "talking trash."

"The timing is right to introduce the BLING BLING 2002(TM) line of games to mainstream audiences," said CEO Jeff McGill, a/k/a SMOKE. "BLING BLING is a game that the inner city demographic can relate to: the lingo, the situations, the pit falls and the come ups," he continued. Intended for two to eight players, the board game is the "Ultimate Hustler's game," according to McGill, who said that the new release is subtitled, "Part 1, The Takeover," and that it is the first in a series of Hip Hop games planned for release in 2006.

A portion of proceeds from the sale of the all games will be donated to The Gameologist Group Community Trust, and the funds distributed to non-profit groups which provide assistance to inner city residents of

d Game Introduced to Urban Market Based on ...        http://www.prnewswire.com/cgi-bin/stories.pl?ACCT=109&STOR...

:tropolitan Atlantic City.
.    The Gameologist Group, LLC is a minority-owned game development company
that creates and designs games, including casino slot machines, casino
table games, board games, lottery card games and video games, most of which
are Hip Hop-inspired. The Gameologist Group LLC is developing a BLING BLING
scratch off Lottery card to be released soon. For further information
contact CEO Jeff McGill 609-553-7979 or visit ..........................
    Visitors to ..................................... can play a free BLING BLING
slot machine game by clicking on the Gameologist Group link; on the slot
machine click on "MAX BET," and press "SPIN."
    CONTACT: Jeffrey ("Jeff") McGill
             (609) 553-7979
             ......................................


**SOURCE The Gameologist Group, LLC**


................

**Related links:**
• http://www...................com
• http://www.gameologistgroup.com
**Photo Notes:**
NewsCom: http://www.newscom.com/cgi-bin/.................
AP Archive: http://photoarchive.ap.org **AP PhotoExpress**
Network: PRN1 PRN Photo Desk, photodesk@prnewswire.com

.........
.... **Technorati**

Industry & Market Focus


**Choose links below to browse the latest Industry News and related resources from PR Newswire.**

Auto & Transportation News
Banking & Financial Services News
Business Services & Consulting News
Energy News
Entertainment & Media News
Government & Policy News
Health News
Heavy Industry News
Retail News
Sports News
Technology News
Travel News

International News
Multicultural News
News For Investors
Trade Shows

Add your news release

PR Toolkit for Communicators

Submit Feedback

**Auto & Transportation includes:**

• **Aerospace & Defense**
• **Airlines & Aviation**
• **Automotive**
• **Maritime & Shipping**
• **Retail & Automotive Sales Reports**
• **Transportation**
• **Travel News**

.............................................................................
........................................................
**Copyright © 1996-2007 PR Newswire Association LLC. All Rights Reserved.**
A ........ company.

**CORRECTION:** On page 109 of the November 2006 issue, the website listed for more information on GameMaker HD, www.gamemaker.com, was incorrect. The email address should have read: www.ballytech.com. We apologize for any confusion or inconvenience.

## Now Panasonic Iris Reader Delivers Faster, More Accurate Access Control Identification and Authentication



Panasonic Security Systems, a division of Panasonic System Solutions Company (PSSA), introduced the new BM-ET200 Iris Reader at ASIS 2006. The BM-ET200 combines Panasonic's core video and imaging technology with an advanced new iris image capture engine and dual mirror design to provide the most accurate and easy to use form of non-invasive biometric identification and authentication. The new BM-ET200 Iris Reader is simple to configure and provides recognition results in only 0.3 seconds. A dual mirror configuration makes it easy for the individual to align the eyes for accurate reading, capturing a detailed image of both irises for maximum accuracy. Voice instructions guide the user's position for optimal performance. The BM-ET200 can either be used as part of a standalone system or integrated into a larger network. Iris recognition technology allows fast one-to-many searches on an extremely large database. The system's enrollment and authentication algorithm, developed by Iridian Technologies, Inc., makes a template or "map" of each person's iris pattern, for storage on a database or onto an access card or token. To verify identity, an individual simply "looks into" a Panasonic Iris Reader and the system compares his/her iris pattern images with iris templates stored in the database or portable device. If there is a match, the identity is verified. To learn more about Panasonic's new iris reader and other products, visit www.panasonic.com/business/security/home.asp.

## Densitron Releases First Dual Core SBC for Gaming: DPX-117

The DPX-117 is an extremely high-performance, industrial-grade single board computer for gaming applications and one of Densitron Gaming's field-proven range of ConnectBus®-II products in the DPX series. The new DPX-117 is the first industrial computer board to offer today's latest dual-core CPU technology on a board specifically designed for the gaming industry. This product confirms Densitron's position as the technology leader in this industry. The DPX-117 supports Intel® Core™ Duo and Core 2 Duo CPUs. Dual-core technology offers



many advantages for gaming applications including improved security and performance. Two physical processing units significantly improve performance in multi-tasking environments and multi-threaded applications. Dual-core technology, together with virtualization technology, also offers advantages for the security and reliability of operation allowing secure partitioning of certain tasks and guaranteeing tasks get CPU and memory resources when needed. The great CPU performance of the DPX-117 is complemented by a range of PCI-Express graphics options delivering state of the art 3D graphics. The DPX-117 uses chipsets and CPUs that feature on Intel's embedded roadmap allowing for a five year minimum lifecycle and enabling the gaming OEM to choose with confidence. For more information on Densitron Gaming's field-proven range of products, as well as the DPX-117, visit their website at www.densitrongaming.com.



## Gameologist Group LLC Offers Hip Hop Board Game and Slot Machine Based on C-LO

A board game based on Hip Hop's favorite dice game, C-LO, has been introduced to the market by the Gameologist Group LLC and 456 Productions.com, two Atlantic City-based, minority-owned companies. Geared to the urban youth market, the game capitalizes on the notoriety of C-LO, which has been played in Hip Hop and R&B music videos. Using the popular C-LO game play to move on the board and accumulate cash and property with which to erect urban city projects, players encounter ups and downs in the process of their turn. They can win or lose money, move their playing piece to "the Bank Statement," or play "C-LO Heads Up" with the Bank for cash or land on "Now What?" and find their fate in the unfortunate and sometimes hilarious inner city "hoods." The player that acquires most of the cash and property, is crowned "Ultimate Hustler," a title which brings with it opportunities for bragging and "talking trash." "The timing is right to introduce the BLING BLING 2002™ line of games to mainstream audiences," said CEO Jeff McGill. "BLING BLING is a game that the inner city demographic can relate to the tinge, the situations, the pit falls and the come ups." For more information on the Gameologist Group LLC, visit www.456productions.com/gameologist.



Security Products From:

SANYO  Panasonic
JVC  space technologies
BOSCH  SAMSUNG
PELCO  TDA
SONY

- Over 40,000 Products Stocked
- Access to over 1.5 million electronic parts and related products
- Gaming Products: Replacement Kortek monitors offered by Cashistics, Touchscreens, LEDs
- Quotation team sent us your quotes for quick response

FREE CATALOG

refer to us on the web
www.mcminone.com/gaming
or call toll free
1-800-543-4330

MCM Electronics
we're one company

Source Code: CEM38

www.casinoenterprisemanagement.com

EURweb.com - Black Entertainment | Black News | Urban News | H...          http://www.eurweb.com/story/eur2850



| JFK High School | Ridgemont High School | Find Your High School Map | Search |



| Home | Horoscope | Ringtones | Feedback | Events | Links | Archives | Podcasts | Comics |

EURweb                                    Search

Sat, Dec 22, 2007

**Headlines**

**Music Pages**

**Gospel Pages**

**Other News**

**Weekly Columns**

**Photo / Blog**

Newsletter Sign-up:
News on Michael Jackson,
50 Cent, Beyonce & More

[ Send ]

D'MORIA JOHNSON

THE UNIOR TAG

SOME OF NEW YORK'S
MOST INSPIRING
LEADING LADIES WON'T
BE FOUND ON A
BROADWAY STAGE.

[ Ad ]    TEACH NYC

Charge.Com

At the guaranteed
lowest price.

where all the
gossip blogs
meet to
dish it out!





## NEW HIP HOP BOARD GAME INTRODUCED: Based on C-Lo Game Play, Bling-Bling is Targeted to the Urban Market.

(September 8, 2008)                              Email to a friend | Print Friendly

Atlantic City, NJ - BLING BLING 2002(TM), a new board game based on Hip Hop's favorite dice game, C-LO, has been introduced to the market by The Gameologist Group LLC and 458 Productions.com, two Atlantic City-based, minority-owned companies.

Geared to the urban youth market, the game capitalizes on the notoriety of C-LO, which has been played in music videos of such Hip Hop and R&B stars as Biggie Smalls, Jay Z, Nas, Cameron and many others.

BLING BLING includes a sound track and a documentary DVD with tracks which are exclusive to the game, together with interviews by Hip Hop artists, including Nu Jersey Devil, DJ Envy, Jim Jones, Sam Scarfo, Riz, DJ Fah, Black Rob, Big Smoke and The King of Kings, among others.

The Hip Hop community has been quick to react. Def Jam artist Sam Scarfo said, "This game is definitely for the Hustlers."; Black Wall Street artist Nu Jersey Devil commented, "It's one of the hottest games I've ever played."; Bad Boy artist Black Rob exclaimed, "What? Thats crazy! I won mad money playing C-LO. Make sure I get a board game!"; Universal Recording artist Marlino said, "The hood is going to love you for this!"; and Dipset's Jim Jones quipped, "C-LO on a board game is a beautiful thing!"

**Adventure. Locally.**



The New Nissan Pathfinder

(NISSAN) SHIFT adventure



The New Nissan Pathfinder



(NISSAN) SHIFT adventure



*The Bling Bling Board Game*

Players become adventurers in an inner city setting, trying to gather up as much money and property as possible in the 30 to 60 minutes that it takes to play. Using the popular C-LO game play to move on the board and accumulate cash and property with which to erect urban city projects, players encounter ups and downs in the process of their turn. They can win or lose money, move their playing piece to "The Bank Statement," or play C-LO Heads Up with the Bank for cash or land on "Now What?" and find their fate in the unfortunate and sometimes

hilarious inner city hoods. The player that acquires most of the cash and property, is crowned "Ultimate Hustler," a title which brings with it opportunities for bragging and talking trash.

The timing is right to introduce the BLING BLING 2002(TM) line of games to mainstream audiences, said CEO Jeff McGill, a/k/a SMOKE. BLING BLING is a game that the inner city demographic can relate t the lingo, the situations, the pit falls and the come ups, he continued. Intended for two to eight players, the board game is the Ultimate Hustlers game, according to McGill, who said that the new release is subtitled, Part 1, The Takeover, and that it is the first in a series of Hip Hop games planned for release in 2006.

A portion of proceeds from the sale of the all games will be donated to The Gameologist Group Community Trust, and the funds distributed to non-profit groups which provide assistance to inner city residents of metropolitan Atlantic City.

The Gameologist Group, LLC is a minority-owned game development company that creates and designs games, including casino slot machines, casino table games, board games, lottery card games and video games, most of which are Hip Hop-inspired. The Gameologist Group LLC is developing a BLING BLING scratch off Lottery card to be released soon. For further information, contact CEO Jeff McGill 609-553-7979 or visit www.456productions.com

Visitors to 456productions.com can play a free BLING BLING slot machine game by clicking on the Gameologist Group link; On the slot machine click on MAX BET,and press;SPIN.

### # # #

source:
Jeffrey ("Jeff") McGill
609-553-7979

Currently, 3 comments have been made on this story.

View Comments or Post Comments.

**African Art & Instruments**
Handmade items from many African nations at a very affordable prices

Ads by Google

Back to Top    Home   Chat   Feedback   RSS   Links

Headlines   Music Pages   Picture Page   Advertise   About Us   Other News 



# NEWSC☽M

▷ PR Newswire Photos ▷ **Document Detail**

Preferences · Help · C

Saturday, 02 Sep

**1. HIP HOP + BOARD GAME = BLING BLING:**          Total of 1 Documents

**HIP HOP + BOARD GAME = BLING BLING**



🔍 ENLARGED VIEW

| | |
|---|---|
| **Document:** | HIP HOP + BOARD GAME = BLING BLING |
| **Doc ID:** | 20060827 PRN1 |
| **Location:** | ATLANTIC CITY, NJ, UNITED STATES |
| **Doc Date:** | Aug/28/2006 (posted Aug/28/2006 5:10 AM) |
| **Format:** | 6.0" x 4.5" @ 300 DPI (1800 x 1350 Color JPEG) |
| **Categories:** | A F ENT |
| **Doc Size:** | 421K |
| **Provider:** | "PR Newswire Photo Service" |
| **Source:** | THE GAMEOLOGIST GROUP, LLC |
| **Special:** | SEE STORY 20060828/NYFNSL02, NY Media contact: Retailers call +1-609-553-7979, gameologist01@456productions.com. |
| **Caption Writer:** | JU |

The Gameologist Group LLC and 456productions.com have introduced a
new Board game based on the popular three dice game known as Cee-
LO. BLING BLING 2002(TM) The Takeover Part 1 is an exciting new table
game played at home or outdoors using the popular three dice Cee-LO
game play. Be sure to visit 456productions.com to view or order this
exciting new game. The Gameologist Group LLC is introducing BLING
BLING scratch off Lottery cards and BLING BLING slot machines in the
near future. BLINGBLING2002 is a registered trademark of the
Gameologist Group LLC. (PRNewsFoto/The Gameologist Group, LLC)

**Note:** To download this image, please register for a NewsCom
account at http://www.newscom.com/nc/membership_free.html. For
more information, please contact NewsCom at
sales@newscom.com or call 202-383-6070 or 800-601-6397
between 8am and 8pm EST, Monday through Friday. If you have a
NewsCom account you may log in here.

For questions or comments about the images listed here please
contact photodesk@prnewswire.com

If you have a NewsCom account, click here to download the hi-
res version of this document.

# Exhibit E



*Nancy A. Palombo, Director*

July 19, 2004

Mr. Joseph Cassarino
Co-Owner
The Gameologist Group LLC/SAC
35 Montague Street
Yonkers, New York   10703

Dear Mr. Cassarino:

Governor Pataki has asked me to respond to your letter regarding Bling Bling Instant Lottery concept.  The New York Lottery is currently not pursuing the name "Bling Bling" for an Instant ticket.

Prior to May 2002, when the New York Lottery was determining a name for the multi-state Lottery game, which is now called "Mega Millions," the name "Bling Bling" was suggested, as well as over 100 possible alternatives. At that time, we felt the name "Bling Bling" had potential to attract the younger demographic if developed as an Instant ticket. Independent of MDI, the New York Lottery asked our Instant ticket manufacturer, Pollard Banknote Ltd., to produce a mock-up version of the Instant ticket "Bling Bling" for focus purposes. The Lottery conducted focus group testing in September 2003.

After focusing the concept, it was determined that the New York Lottery would not pursue the game "Bling Bling," due to disappointing focus results. Only 36% of the focus group participants gave "Bling Bling" a positive rating. A separate spending exercise yielded only 26% of players purchasing "Bling Bling" when compared to both current Lottery tickets, as well as other focus pieces.

The results gathered during focus group testing indicated that the game "Bling Bling" did not meet New York Lottery Instant game salability standards and it was decided at that point not to go forward with the concept.

The New York Lottery appreciates your time and efforts; however, we will not be pursuing this concept at this time.

Sincerely,

*Nancy Palombo*

Nancy A. Palombo
Director

cc:   Governor George E. Pataki

*New York Lottery, One Broadway Center, P.O. Box 7500, Schenectady, NY 12301-7500*
*(518) 388-3300 Fax (518) 388-3403*
*www.nylottery.org*

When New Yorkers Play Responsibly, We All Win.

# Exhibit F

