Joshua R. Slavitt (JS-4464)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Attorneys for Defendants
New York State Division of the Lottery and
Scientific Games, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| THE GAMEOLOGIST GROUP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 1:08-cv-05896 (JEI)(AMD) |
| | : | |
| NEW YORK DIVISION OF LOTTERY and | : | |
| SCIENTIFIC GAMES, INC., | : | |
| | : | **Motion Return Date: March 2, 2009** |
| Defendants. | | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(B)(7) OR,
IN THE ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**

Joshua R. Slavitt (JS-4464)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Attorneys for Defendants
New York State Division of the Lottery and
Scientific Games, Inc.

## **<u>TABLE OF CONTENTS</u>**

**Page**

I.      SUMMARY ............................................................................................................. 1

II.     BACKGROUND ..................................................................................................... 3

III.    ARGUMENT .......................................................................................................... 5

   A.   The Eleventh Amendment Bars Plaintiff's Claims Against the Lottery ............................ 5

   B.   This Action Should Be Dismissed as the Lottery Is an Indispensable Party ...................... 9

   C.   Venue Should be Transferred to the Northern District of New York ............................... 12

      1.   Venue Is Proper in the Northern District of New York ................................................14

      2.   Transfer of Venue to The Northern District of New York Will  Better Serve the Private Interests of the Litigants and Witnesses .......................................................................16

      3.   Transfer of Venue to The Northern District of  New York Will Better Serve the Public Interest......................................................................................................................18

      4.   The Interests of Justice Strongly Favor Transfer of Venue ..........................................18

IV.    CONCLUSION...................................................................................................... 19

## TABLE OF AUTHORITIES

### CASES

*Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S. Ct. 3142 (1985) ................................8

*Automated Ticket System, Ltd. v. Quinn*,
90 A.D.2d 738, 455 N.Y.S.2d 799 (1st Dep't 1982) ........................................8

*Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir. 1999)........................................7

*Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000)........................................9

*Chisolm v. McManimon*, 275 F.3d 315 (3d Cir. 2001) ........................................7

*Christy v. Pennsylvania Turnpike Commission*, 54 F.3d 1140 (3d Cir. 1995) ................7

*Clark v. Barnard*, 108 U.S. 436, 2 S. Ct. 878 (1883) ........................................8

*College Sav. Bank v. Fla. Prepaid Postsecondary Education Expense Board*,
527 U.S. 666, 119 S. Ct. 2219 (1999)........................................9

*Cooper v. SE Pa. Transport Authority*, 548 F.3d 296 (3d Cir. 2008)........................................7

*Cottman Transmission System, Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994) ................16

*Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347 (1974) ........................................5, 8

*Federal Maritime Commission v. S.C. State Ports Authority*,
535 U.S. 743, 122 S. Ct. 1864 (2002)........................................5, 6

*Fitchik v. New Jersey Transit Rail Operations Inc.*, 873 F.2d 655 (3d Cir. 1989)....................6, 7

*Fitzpatrick v. Bitker*, 427 U.S. 445, 96 S. Ct. 2666 (1976)........................................8

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839 (1947)........................................13

*HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185 (3d Cir. 1996)........................10

*Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358 (1991) ........................................6

*Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 115 S. Ct. 394 (1994)........................7

*Independent Wireless Telegraph Co. v. Radio Corp.*, 269 U.S. 459, 46 S. Ct. 166 (1926)..........11

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399 (3d Cir. 1993) ...................11

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3rd Cir. 1995).................................13

*Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099 (1985)............................................6

*LG Electronics, Inc. v. First International Computer, Inc.*,
138 F. Supp. 2d 574 (D.N.J. 2001) .................................................................14, 16

*Liggett Group v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d. 518 (D.N.J. 2000) ...............13, 16

*Lombardo v. Pennsylvania Department of Public Welfare*, 540 F.3d 190 (3d Cir. 2008) .............5

*NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317 (D.N.J. 1998).....................16

*Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89, 104 S. Ct. 900 (1984)...............5, 8

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
390 U.S. 102, 88 S. Ct. 733 (1968)...................................................................11

*Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139 (1979) ..................................................8

*Regents of the University of California v. Doe*, 519 U.S. 425, 117 S. Ct. 900 (1997) ...................6

*Ricoh v. Honeywell, Inc.*, 817 F. Supp. 473 (D.N.J. 1993)............................................16

*S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185 (N.D. Ill. 1983) ...........................16

*Solomon v. Continental American Life Insurance Co.*, 472 F.2d 1043 (3d Cir. 1973) ................17

*Steel Valley Authority v. Union Switch and Signal Division*, 809 F.2d 1006 (3d Cir. 1987) ........11

*Tefal, S.A. v. Products International Co.*, 529 F.2d 495 (3d Cir. 1976).................................15, 16

*U.S. Golf Association v. U.S. Amateur Golf Association*, 690 F. Supp. 317 (D.N.J. 1988) ..........16

*Van Cauwenberghe v. Biard*, 486 U.S. 517, 108 S. Ct. 1945 (1988) ...........................14

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S. Ct. 2304 (1989).....................6

**STATUTES**

42 U.S.C. § 1983...................................................................................9

28 U.S.C. § 1391(b) .............................................................................14

28 U.S.C. § 1391(c) ...................................................................................................15

28 U.S.C. § 1404(A) ...............................................................................1, 12, 17, 19

Fed. R. Civ. P. 12(b)(1)...........................................................................1, 2, 9, 12, 19

Fed. R. Civ. P. 19 .................................................................................................2, 9

Fed. R. Civ. P. 19(a) .........................................................................................11, 12

Fed. R. Civ. P. 19(b) ....................................................................................2, 10, 12

Fed. R. Civ. P. 45(e)(1) ........................................................................................17

15 U.S.C. § 1051 *et seq.*........................................................................................14

N.Y. Const., Art. V, §2 ...........................................................................................4

N.Y. Tax Law § 170[2].............................................................................................5

N.Y. Tax Law § 1603 ..............................................................................................7

N.Y. Tax Law § 1615(b) ..........................................................................................7

## MISCELLANEOUS

3A J. Moore, Moore's Federal Practice ¶ 19.02 ..........................................................11

I.      SUMMARY

Defendants, New York State Division of the Lottery (the "Lottery") and Scientific Games, Inc. ("Scientific Games") (collectively, the "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the action filed against them by Plaintiff, The Gameologist Group, LLC (the "Plaintiff") or, in the alternative, to dismiss the action as against the Lottery and to transfer venue of the action as against Scientific Games to the Northern District of New York.

The Plaintiff has commenced the present action against the Lottery, a division within the executive branch of the state government of New York.  As an arm of the state, the Lottery enjoys sovereign immunity from suit in this Court under the Eleventh Amendment of the United States Constitution.  The Plaintiff has alleged neither the State of New York's express waiver of this immunity nor an explicit abrogation of such immunity by Congress.  Rather, the Plaintiff has endeavored to characterize the Lottery as simply beyond the protection of the Eleventh Amendment through a grossly misleading presentation of the Lottery's enabling legislation as well as the conditions under which it operates within New York State government. An examination of the unredacted text of the Lottery's enabling legislation reveals the Plaintiff's fundamental error.  As set forth more fully below, the Lottery is a state agency wholly within the New York State Department of Taxation and Finance.  It is run by a Director who is appointed by, and serves at the pleasure of, the Commissioner of Taxation and Finance.  Most importantly, any judgment entered against the Lottery would necessarily impose a liability upon the public treasury of the State of New York.  Accordingly, the Lottery is entitled to Eleventh Amendment immunity, and all claims against it must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

With the dismissal of the Lottery as a party to this action, the Plaintiff's claims against Scientific Games should also be dismissed as the Lottery is an indispensable party under Fed. R. Civ. P. 19.  The Plaintiff has alleged that its federally-registered trademark, BLING BLING 2002 for "entertainment services in the nature of online three-dice casino games," has been infringed by the Defendants' introduction of an Instant Scratch-Off lottery ticket game called BA-DA BLING.  As set forth more fully below, Scientific Games is the owner of U.S. Trademark Application Serial No. 77/515849 for BA-DA BLING for "lottery cards and lottery tickets," and its BA-DA BLING branded lottery tickets have been supplied exclusively by Scientific Games to the Lottery.  Declaration of James C. Kennedy ("Kennedy Decl.") at ¶¶ 5-6. Because of this, ***any*** determination of the Plaintiff's rights in its mark, BLING BLING 2002, vis-à-vis Scientific Games would necessarily implicate the exclusive rights of the Lottery in BA-DA BLING.

As set forth above, the Lottery cannot be made a party to this action in view of its Eleventh Amendment immunity.  As exclusive licensee of the BA-DA BLING mark for lottery tickets, however, any judgment in this action with regard to Plaintiff's rights in BLING BLING 2002 rendered in the Lottery's absence would be unavoidably prejudicial to the Lottery's exclusive rights in BA-DA BLING.  Moreover, the ***only*** forum in which the Plaintiff may even pursue its claims against the Lottery would be in New York State court.  Therefore, in equity and good conscience, the present action should be dismissed as to Scientific Games under Fed. R. Civ. P. 12(b)(7) for failure to join the Lottery under Fed. R. Civ. P. 19(b).

In the alternative, Scientific Games moves for a transfer of venue to the Northern District of New York for the convenience of the parties and witnesses, and in the interest of justice.  As set forth more fully below, this case concerns New York lottery tickets – goods that,

by law, can *only* be sold within the territorial boundaries of the State of New York.  Because of

this distinctive aspect of the accused goods in this case, it can be stated with a precision

uncommon in trademark disputes that the Plaintiff's claims arose *only* in New York.  The

Plaintiff has alleged *no* conduct of either Scientific Games or the Lottery relating to its claims

that occurred in or was even directed to the State of New Jersey.  Indeed, there is *no connection*

*whatsoever* between this action and the State of New Jersey, except for Plaintiff's averments that

it is a New Jersey corporation headquartered in Atlantic City, New Jersey.  Moreover, the

convenience of the witnesses and the interests of justice would be served by a transfer of venue.

With the dismissal of the Lottery, the most relevant non-party witnesses and the vast majority of

relevant documents relating to the Plaintiff's claims would be located at the principal offices of

the Lottery in Schenectady, New York – a location in excess of 100 miles from any Federal court

within New Jersey.  Further, due to the territorial limit of all retail sales of the accused goods,

New York has a significant local interest in protecting its own citizens, whereas New Jersey does

not.  As a result, due consideration of the relevant venue factors militates strongly in favor of

transferring this action to the Northern District of New York.

## II.    BACKGROUND

According to the Complaint, Jeffrey McGill ("McGill"), a slot machine technician

from Atlantic City, first developed the idea of BLING BLING 2002[1] in 2001.  *See* Complaint at

¶ 19.  As alleged, McGill subsequently assigned his rights in BLING BLING 2002 to the

Plaintiff which, in January of 2003, filed an intent-to-use application for registration of BLING

---

[1] Defendants note that the Plaintiff consistently misrepresents its registered mark as
simply BLING BLING.  The Plaintiff's mark is actually BLING BLING 2002, as can be seen in
Exhibit A to the Complaint, and references to the Plaintiff's mark in this brief will employ its
complete form.

BLING 2002 for "entertainment in the nature of online three dice casino games" in International Class 41.  *Id.* at ¶¶ 20-22.  The Plaintiff subsequently developed a series of online casino-style dice games employing the BLING BLING 2002 mark, and secured the Federal registration for BLING BLING 2002 with a first use in commerce date of December 22, 2004.  *Id.* at ¶¶ 21-22; s*ee also* Exhibit A to the Complaint.

In April of 2003, the Plaintiff contacted MDI Entertainment, Inc. ("MDI") a subsidiary of Scientific Games located in Alpharetta, Georgia.  *Id.* at ¶ 33.  This contact led to a meeting in October of 2003 between representatives of the Plaintiff and MDI's president, Steve Saferin, along with additional MDI personnel, at MDI's headquarters in Alpharetta and, in January 2004, an agreement between the Plaintiff and MDI.  *Id.* at ¶¶ 38, 41; *see also* Exhibit C to the Complaint.  Two months later, in March of 2004, MDI cancelled the agreement.  *Id.* at ¶ 46.[2]

In 2007, the Lottery launched a new Instant Scratch-Off ticket game called BA-DA BLING in December of 2007.  *See* Complaint at ¶ 55.  This new Instant Scratch-Off ticket game was developed by Scientific Games for exclusive distribution to the Lottery and for subsequent retail sale exclusively within the State of New York.  *See* Kennedy Decl. at ¶ 7.  All discussions and negotiations between Scientific Games and the Lottery concerning the BA-DA BLING Instant Scratch-Off ticket, as well as all of the development, design, and production work associated with the BA-DA BLING scratch tickets, occurred either in New York or Georgia.  *Id.* at ¶ 6.

The executive branch of the New York State government consists of 20 departments.  N.Y. Const., Art. V, §2.  The Department of Taxation and Finance is one of these

---

[2] The Complaint actually states that "Scientific cancelled the contract."  However, since Scientific Games was not a party to the agreement, the contract was actually cancelled by MDI.

departments and is made up of four divisions: the Division of Taxation, the Division of the Treasury, the Division of the Lottery, and the Division of Tax Appeals.  *See* N.Y. Tax Law § 170[2].  The head of the Department of Taxation and Finance is the Commissioner of Taxation and Finance who is appointed by, and serves at the pleasure of, the Governor.  *Id.* at §§ 170[5], 171.  The head of the Lottery is the Director of the Lottery who is appointed by, and serves at the pleasure of, the Commissioner of Taxation and Finance.  *Id.* at § 1603.  As a division within a department of the executive branch of New York State government, the annual budget for the Lottery is determined by the Governor's annual budget, and any modifications to its budget requires legislative approval.  *Id.* at § 1615.  Ultimately, the Lottery has no autonomy to operate outside the scope of its mandate, executive branch oversight, or legislative restrictions, and any judgment entered against the Lottery would necessarily impose a liability upon the public treasury of the State of New York.  Declaration of William J. Murray("Murray Decl.") at ¶¶ 2-6.


## III.    ARGUMENT

### A.    The Eleventh Amendment Bars Plaintiff's Claims Against the Lottery

The Eleventh Amendment to the United States Constitution bars suits in Federal court against any non-consenting state by that state's own citizens as well as by citizens of other states. *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347 (1974).  Absent a clear waiver by a state of its sovereign immunity under the Eleventh Amendment, or a Congressional abrogation of that immunity, a Federal court lacks jurisdiction to hear claims brought by an individual against a state.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n. 8, 104 S. Ct. 900 n. 8 (1984).  Sovereign immunity comprises more than just immunity from suit in Federal court. *Lombardo v. Pennsylvania Dept. of Public Welfare*, 540 F.3d 190, 195 (3d Cir. 2008).  It also includes a state's immunity from liability.  *See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535

U.S. 743, 122 S. Ct. 1864 (2002) ("Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability."); *Edelman v. Jordan*, 415 U.S. at 662-64, 94 S. Ct. at 1347 (characterizing state sovereign immunity as safeguarding States against both "suits" and "liability").  Furthermore, the immunity "applies regardless of whether a private plaintiff's suit is for money damages or some other type of relief."  *Fed. Mar. Comm'n*, 535 U.S. at 765, 122 S. Ct. at 1877.

The Eleventh Amendment's reference to actions "against one of the United States" encompasses not only actions in which a state is actually named as the defendant, but also actions against state agencies and state officials acting in their official capacities.  *See Regents of the University of California v. Doe*, 519 U.S. 425, 117 S. Ct. 900 (1997) (citations omitted).  Thus, under the Eleventh Amendment, suits against state agencies and state officials acting in their official capacities are no different from suits against the state itself, and are barred. *See e.g. Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358 (1991); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099 (1985).

A state agency is entitled to immunity from suit in Federal court under the Eleventh Amendment when a judgment against it would have essentially the same practical consequences as a judgment against the state itself.  *See Fitchik v. New Jersey Transit Rail Operations Inc.*, 873 F.2d 655, 658 (3d Cir. 1989) (*en banc*) (*quoting Lakes Country Estates Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)).  The question of whether a particular state agency is an "arm of the state," and therefore entitled to Eleventh Amendment immunity, is a question of Federal law, but this question "can be answered only after considering the provisions of state law that define the agency's character." *Regents of the Univ. of Cal.*, 519

U.S. at 429 n. 5, 117 S. Ct. at 904 n. 5. Though not dispositive, a state's own characterization of an entity under state law is significant. *See Cooper v. SE Pa. Transp. Auth.*, 548 F.3d 296 (3d Cir. 2008).

   The Third Circuit employs a three-factor test to determine whether a governmental entity is an arm of the state and therefore entitled to Eleventh Amendment immunity: (1) whether payment of a judgment resulting from the suit would come from the state treasury; (2) the status of the entity under state law; and (3) the entity's degree of autonomy. *See Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001) (*citing Fitchik*, 873 F.2d at 659). While no one factor is dispositive, the Third Circuit has identified as significant whether a judgment resulting from the suit would be paid from the state treasury. *Id.* (*citing Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir. 1999); *Christy v. Pennsylvania Turnpike Comm'n*, 54 F.3d 1140, 1145 (3d Cir. 1995); *see also Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 37-38, 115 S. Ct. 394 (1994).

   As noted above, the Lottery is a division within the Department of Taxation and Finance, and the Director of the Lottery is appointed by, and serves at the pleasure of, the Commissioner of Taxation and Finance. *See* N.Y. Tax Law § 1603.  Further, the annual budget for Lottery is determined as part of the Governor's annual budget (*see* Chapter 55 of the Laws of 2008, appropriating $120 million from the New York State Treasury for the operating expenses of the Lottery in the 2008-2009 fiscal year), and any modifications to the Lottery's annual budget requires legislative approval. *See* N.Y. Tax Law § 1615(b).  Moreover, and contrary to the Plaintiff's unsupported and entirely erroneous allegations, any judgment entered against the Lottery would necessarily impose a liability upon the New York public treasury. S*ee* Chapter 50 of the Laws of 2008, appropriating $100 million from the New York State Treasury for the

payment of judgments entered against the State in the New York State Court of Claims.  *See* Murray Decl. at ¶¶ 4-6.  In satisfying each of the three factors, the Lottery is clearly an arm of the State of New York and entitled to sovereign immunity under the Eleventh Amendment.  *See also Automated Ticket Sys., Ltd. v. Quinn*, 90 A.D.2d 738, 455 N.Y.S.2d 799 (1st Dep't 1982) , *aff'd*, 58 N.Y.2d 949, 460 N.Y.S.2d 533, 447 N.E.2d 82 (1983) (action for money damages against director of the state lottery, arising from the disputed termination of plaintiff's licensing agreement, was actually an action against state).

There are only two circumstances where an individual may sue a state in Federal court.  First, immunity may be waived and a state may consent to suit against it in Federal court. *See, e.g., Clark v. Barnard*, 108 U.S. 436, 447, 2 S. Ct. 878, 882-883 (1883). In such cases, the state's consent must be unequivocally expressed.  *See, e.g., Edelman*, 415 U.S. at  673, 94 S. Ct. at 1360-1361.  The test for determining whether a State has waived sovereign immunity by consenting to suit is "a stringent one."  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S. Ct. 3142 (1985).  A state is deemed to waive its immunity only where such waiver is "stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'"  *Id.* (*quoting Edelman*, 415 U.S. at 673, 94 S. Ct. 1347).  Moreover, a state cannot constructively or impliedly waive its sovereign immunity; rather, to be subject to federal jurisdiction, the state must expressly and unequivocally communicate its consent.  *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99, 104 S. Ct. at 900.

Similarly, although Congress has power with respect to the rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity, *see Fitzpatrick v. Bitker*, 427 U.S. 445, 96 S. Ct. 2666 (1976), an unequivocal expression of Congressional intent is required to "overturn the constitutionally guaranteed immunity of the several States." *Quern v.*

*Jordan*, 440 U.S. 332, 342, 99 S. Ct. 1139, 1146 (1979) (holding that 42 U.S.C. § 1983 does not override States' Eleventh Amendment immunity).

Neither of the two exceptions to sovereign immunity applies to the present case. The State of New York has not waived its immunity and the Plaintiff has not alleged otherwise. Moreover, it is well-established that sovereign immunity prohibits Lanham Act claims against the states as well as state agencies and state officers who act on behalf of the state. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675, 119 S. Ct. 2219, 2225 (1999) (holding Trademark Remedy Clarification Act, to be an invalid abrogation of States' sovereign immunity from trademark infringement actions); *see also Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000) (Trademark Remedy Clarification Act invalid exercise of Article 1 legislative power).   As a result, neither of the two exceptions applies.  The Lottery, as an arm of the State of New York, is entitled to the sovereign immunity under the Eleventh Amendment.  The Plaintiff's claims, therefore, should be dismissed due to the lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**B.      This Action Should Be Dismissed as the Lottery Is an Indispensable Party**

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides that an action may be dismissed due to the plaintiff's failure to join an indispensable party.  Rule 19, in turn, provides the two-part analysis the Court must employ in determining whether an absent party is an indispensable party.  The first step is to determine whether a person should be joined as a necessary party.  Under Rule 19(a), a person should be joined in a proceeding if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

> (i) as a practical matter impair or impede the person's ability to protect that interest or
>
> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

If a party is deemed to be a necessary party under Rule 19(a), the Court then proceeds with the second part of the analysis. Under Rule 19(b), the Court must determine:

> (1) whether it is possible for the absent necessary party to be joined; and
>
> (2) if joinder of the absent party is not feasible, whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.

Fed. R. Civ. P. 19(b). The factors for determining whether a party is indispensable are listed in Rule 19(b). Those factors are:

> (1) to what extent will a judgment rendered in the party's absence be prejudicial to the party or to those who remain;
>
> (2) to what extent will protective measures in the judgment ameliorate or avoid any such prejudice;
>
> (3) to what extent will a judgment rendered in the party's absence be adequate; and
>
> (4) to what extent will the plaintiff have an adequate remedy if the action is dismissed due to the absence of the party.

Fed. R. Civ. P. 19(b); *see also HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1191 (3d Cir. 1996).  If, by the application of these factors, the party is determined to be indispensable, the action cannot go forward.  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993)

The question of an absent person's indispensability is a fact-specific issue that "can only be determined in the context of the particular litigation."  *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118, 88 S. Ct. 733, 742 (1968).  Parties are indispensable if "'in the circumstances of the case[they] must be before the court.'"  *Steel Valley Authority v. Union Switch and Signal Division*, 809 F.2d 1006, 1011 (3d Cir. 1987) (*quoting* 3A J. Moore, *Moore's Federal Practice* ¶ 19.02). In other words, indispensable parties are "'[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.'"  *Id.* (*quoting Shields v. Barrow*, 58 U.S. (17 How.) 130, 139 (1854)); *see also Independent Wireless Tel. Co. v. Radio Corp.*, 269 U.S. 459, 466, 46 S. Ct. 166, 168 (1926) (stating that both the owner and the exclusive licensee are generally necessary parties in an action in equity).

As noted above, there is not only one mark at issue in this case – there are, in fact, two: BLING BLING 2002 and BA-DA BLING.  As exclusive licensee of the BA-DA BLING mark for Instant Scratch-Off lottery tickets, any determination of the Plaintiff's rights in BLING BLING 2002 vis-à-vis Scientific Games would, by necessity, implicate the Lottery's rights in BA-DA BLING.  As a result, the Lottery has an interest relating to the subject of the action and is so situated that the disposition of the action in the Lottery's absence may, as a practical matter,

impair or impede its ability to protect that interest.  Thus, under the criteria in Rule 19(a), the Lottery is a necessary party to the present action.

The next step in the analysis under Rule 19(b) is to determine whether it is feasible to join the Lottery in this action.  As noted above, the Lottery enjoys sovereign immunity under the Eleventh Amendment.  As a result, it is clearly not feasible to join the Lottery in this action.  Having established that the Lottery is a necessary party but that it cannot be joined, the Court must consider whether, in equity and good conscience, the action should proceed among the parties before it, or whether it should be dismissed.  Fed. R. Civ. P. 19(b).  In considering the relevant factors, it is clear that the factors militate strongly in favor of dismissal.

As noted above, a judgment rendered in the Lottery's absence as to the Plaintiff's rights in BLING BLING 2002 vis-à-vis Scientific Games would be unavoidably prejudicial to the Lottery's exclusive rights in BA-DA BLING.  Moreover, by the very nature of such a judgment – that a determination of rights as to one mark will necessarily determine rights as to the other – there are no protective measures that could be taken to ameliorate or avoid such prejudice.  Further, the ***only*** forum in which the Plaintiff may pursue its claims against both the Defendants would be in New York State court.  As a result, the Plaintiff will still have not only an adequate remedy, but potentially its only complete remedy, if the action is dismissed.  Thus, the application of the Rule 19(b) factors makes plain that the Lottery is an indispensable party and militates strongly in favor of dismissal of the action as to Scientific Games.

### C.   Venue Should be Transferred to the Northern District of New York

In the event that the claims against Scientific Games are not dismissed pursuant to Fed. R. Civ. P. 12(b)(7), this Honorable Court should transfer venue for this action to the

Northern District of New York for the convenience of the parties and witnesses, and in the interests of justice.

Title 28 U.S.C. § 1404 governs changes of venue and provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might be brought.  28 U.S.C. § 1404.  The purpose of Section 1404(a) is "to avoid the waste of time, energy and money, and in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805 (1964) (*quoting Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27, 80 S. Ct. 1470 (1960)); *Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000).  The decision to transfer venue involves a three-part analysis:

(1) whether the proposed transferee court is one where the case could have been brought, i.e., where venue can be properly laid and where jurisdiction can be established over all defendants;

(2) whether the proposed transferee court will better serve the private interests of the litigants and witnesses than the court in which the case was filed.; and

(3) whether the proposed transferee court will better serve the public interest.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3rd Cir. 1995).

The factors that guide the Court's decision-making fall into two categories: (1) the private interests of the litigants; and (2) the public interest in the fair and efficient administration of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509, 67 S. Ct. 839, 843 (1947).  The Third Circuit has set out a list of factors that courts should consider when assessing the relevant private and public interests.  *See Jumara*, 55 F.3d at 879.  Private interests include (1) the

plaintiff's preference as manifested in the original choice; (2) the defendants' preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *LG Electronics*, 138 F. Supp.2d at 586.

The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable law in diversity cases. *Id.* at 586-87.  Neither list of factors is exhaustive, and certain factors may be more or less relevant in particular cases. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 528-529, 108 S. Ct. 1945 (1988).

In considering these factors in the venue analysis, the facts of the present case demonstrate clearly that the Northern District of New York is not only the more appropriate forum relative to the witnesses and the location of documents, but indeed the most appropriate forum for the vindication of the public interests implicated by this case.

### 1.  Venue Is Proper in the Northern District of New York

In deciding a motion to transfer venue, the initial inquiry is whether venue is proper and whether jurisdiction can by exercised over all defendants in the transferee forum. *LG Electronics, Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 586 (D.N.J. 2001).  The claims in this case are brought under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and related claims under New Jersey common law.  Venue is proper for these claims in "(1) a judicial

district where any defendant resides, if all defendants reside in the same State; (2) a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred, or

a substantial part of the property that is the subject of the action is situated; or (3) a judicial

district in which any defendant may be found, if there is no district in which the action may

otherwise be brought."  28 U.S.C. § 1391(b).

        For purposes of determining venue based on residence, a corporate defendant

"shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at

the time the action is commenced."  28 U.S.C. § 1391(c).  For claims under the Lanham Act, a

cause of action arises "where the passing off occurs."  *Tefal, S.A. v. Products Int'l Co.*, 529 F.2d

495, 496 n.1 (3d Cir. 1976).  Under *Tefal*, if the infringement of a registered trademark occurred

solely within one district, then only in that district would venue be proper.  *Tefal*, 529 F.2d at

497.  By the same token, however, if the infringement occurred in other districts as well, then

venue could be proper in more than one district. *Id.*

        In the present case, Scientific Games is a corporation with its headquarters located

in New York, New York.  Kennedy Decl. at ¶ 2.  As a result, Scientific Games is subject to

personal jurisdiction in the State of New York and, therefore, is deemed to reside in the Northern

District of New York.  Further, all of the discussions and negotiations between Scientific Games

and the Lottery concerning the BA-DA BLING Instant Scratch-Off lottery tickets, as well as

substantially all of the development, design, and production work associated with the BA-DA

BLING Instant Scratch-Off lottery tickets, occurred either in New York or in Georgia.  *Id.* at ¶ 6;

*see also* Murray Decl. at ¶ 8.  Moreover, the BA-DA BLING Instant Scratch-Off lottery tickets

are goods that, by law, can ***only*** be sold within the territorial boundaries of the State of New

York.  Murray Decl. at ¶ 9.  Because of this, all the events giving rise to the Plaintiff's claims –

all of the alleged passing off – occurred *only* in New York.  Accordingly, under the facts of this case, the present action could have been brought in the Northern District of New York.

> **2.      Transfer of Venue to The Northern District of New York Will
> <u>Better Serve the Private Interests of the Litigants and Witnesses</u>**

The private interests in this case support a transfer of venue to the Northern District of New York.  While a plaintiff's selection of the forum is a factor to be considered, it "is simply a preference, it is not a right."  *LG Electronics*, 138 F. Supp.2d at 530.  Moreover, a plaintiff's choice of forum is entitled to less weight when the central facts of a lawsuit occur outside of the chosen forum. *Ricoh v. Honeywell, Inc.*, 817 F. Supp. 473, 481 (D.N.J. 1993); *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp.2d 317, 321 (D.N.J. 1998) (*citing S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983) ("As a general rule, the preferred forum is that which is the center of gravity of the accused activity.").

In the present case, the most significant private interest factor is the fact that the Plaintiff's claims arose elsewhere.  As noted above, claims under the Lanham Act arise "where the 'passing off' occurs, i.e., where the deceived customer buys a defendant's product in the belief that he or she is buying plaintiff's product."  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (*citing Tefa*, 529 F.2d at 496 n.1; *U.S. Golf Ass'n v. U.S. Amateur Golf Ass'n,* 690 F. Supp. 317, 320 (D.N.J. 1988) (quotations and citations omitted)).  In the present case, the Plaintiff's claims arose *only* in New York because that is the *only* jurisdiction where the allegedly infringing goods – BA-DA BLING Instant Scratch-Off lottery tickets – have ever been sold.  Indeed, there is no connection between New Jersey and Plaintiff's claims, except that Plaintiff is located in New Jersey.  As a result, this factor weighs decisively in favor of transfer and against a New Jersey forum.

The other significant private interest factor is the location of witnesses in the Northern District of New York.  In considering this factor, it is the convenience of non-party witnesses that is mainly at issue.  *Liggett Group*, 102 F. Supp. 2d at 534.  While all non-party witnesses have not yet been identified, the dismissal of the Lottery on Eleventh Amendment grounds will mean that the most relevant potential non-party witnesses, i.e., those representing the Lottery, will be located in Schenectady, New York.  Other than the Lottery, there will not likely be any other third-party witnesses.  Therefore, the convenience of the Lottery witnesses is likely the only issue to consider under this factor.

Moreover, the amenability of these potential witnesses to compulsory process is a factor for the court to consider in a Section 1404(a) analysis.  *See Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) ("the amenability of at least seven crucial witnesses to compulsory process in North Carolina and not in New Jersey" weighed in favor of transfer); *see* Fed. R. Civ. P. 45(e)(1) (non-party may not be held in contempt for failure to obey subpoena requiring non-party to travel to a place more than 100 miles from the place s/he resides).  As the Court will note, Schenectady is located approximately 249 miles away from Camden, New Jersey and approximately 165 miles away from the closest Federal courthouse in New Jersey located in Newark.  Therefore, employees of the Lottery who worked directly with Scientific Games, along with all of the other witnesses from the Lottery involved in the development, marketing and sales of BA-DA BLING Instant Scratch-Off lottery tickets will not be subject to the subpoena power of the District of New Jersey.  As a result, this factor weighs strongly in favor of transfer of venue.

While Scientific Games does not presently believe that the present action will be a particularly document-intensive case, to the extent that this factor relates to forum selection,

many if not most of the relevant documents are in the Lottery's possession, including documents concerning the decision to adopt the BA-DA BLING Instant Scratch-Off lottery tickets, its development with Scientific Games, as well as all of the records reflecting the Lottery's sales and profits for the BA-DA BLING game.  In fact, the Lottery is the only other entity, besides Scientific, that would likely possess documents reflecting the alleged conspiracy between the Defendants.  By contrast, none of these documents would be found in New Jersey.  As a result, this factor weighs in favor of transfer to the Northern District of New York.

### 3.   Transfer of Venue to The Northern District of New York Will Better Serve the Public Interest

According to the Complaint, this case involves a New York State agency that is alleged to have conspired with a New York-headquartered corporation to commit trademark infringement and related offenses solely within the boundaries of New York State with the harm allegedly caused thereby visited primarily upon the citizens of the State of New York.  Indeed, the Plaintiff's claims directly *and uniquely* involve the State of New York.  As a result, New York has a far more significant local interest in the case than does New Jersey.  While damages alleged to have been suffered by a New Jersey trademark owner may implicate in a highly attenuated way New Jersey's interest in this matter, that interest is greatly outweighed by the significant and unique interests of the State of New York.  As a result, this factor weighs heavily in favor of transfer.

### 4.   The Interests of Justice Strongly Favor Transfer of Venue

The overall interests of justice will be served by transferring this case to New York.  The complete lack of a nexus between the Plaintiff's allegations and New Jersey, the

location of relevant witnesses in New York, and the significant and unique interests of the State

of New York in this matter combine to overcome the Plaintiff's choice of a forum with only a

tenuous connection to the matters to be litigated.  The interests of justice support the transfer of

venue to the only state where allegedly infringing conduct occurred and where the facts

comprising the alleged "conspiracy" occurred: New York.

The factors that inform the Court's consideration of a motion to transfer venue

under § 1404(a) overwhelmingly point to the Northern District of New York as the preferred

forum.  New York is uniquely situated so that its interests dramatically outweigh the interests of

any other forum.  The plaintiff's choice of forum should be set aside in favor of a forum with the

significant interests in the adjudication of the matter.  Moreover, New York, unlike any other

form, is where the Plaintiff's claims arose and where key third-party witnesses will be subject to

the subpoena power of the Federal district court.  Accordingly, venue for this matter should be

transferred to the Northern District of New York.


## IV.      CONCLUSION

For the forgoing reasons, Defendants respectfully request that this Honorable Court

dismiss the Complaint as against the Lottery pursuant to Fed. R. Civ. P. 12(b)(1), and dismiss the

Complaint as against Scientific Games pursuant to Fed. R. Civ. P. 12(b)(7) or, in the alternative,

transfer venue for this action to the Northern District of New York pursuant to 28 U.S.C. §

1404(a).

Respectfully submitted,


Dated:  January 26, 2009                     _____s/ Joshua R. Slavitt_____
                                             Joshua R. Slavitt (JS-4464)
                                             PEPPER HAMILTON LLP
                                             3000 Two Logan Square
                                             Eighteenth & Arch Streets
                                             Philadelphia, PA  19103-2799
                                             (215) 981-4000

                                             Attorneys for Defendants
                                             New York State Division of the Lottery and
                                             Scientific Games, Inc.

**<u>CERTIFICATE OF SERVICE</u>**

        I, Joshua R. Slavitt, hereby certify that on the date set forth below I caused to be

served of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P.

12(b)(7) or, in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. §1404(a), and

Memorandum of Law in support thereof, upon counsel for Plaintiff, The Gameologist Group,

LLC, by electronic means through the electronic filing system of the U.S. District Court for the

District of New Jersey.


Date: January 26, 2009                                        s/ Joshua R. Slavitt
                                                          Joshua R. Slavitt